[S. F. No. 15477.  In Bank.—January 22, 1936.]

D. M. COLLYER, Respondent, v. S. H. KRESS AND COMPANY (a Corporation) et al., Appellants.

Sylvester J. McAtee for Appellants.

Jesse E. Nichols, D. W. Brobst and John M. Cartwright for Respondent.

THOMPSON, J.—This case was transferred to this court after decision by the District Court of Appeal, for the purpose of giving further consideration to the important question of whether a private person may, in the protection of his property, detain another for investigation and whether, in an action for false imprisonment in such a case, probable cause at the time of such detention may be considered as a defense. The statement of facts is taken from the opinion of the District Court of Appeal:

"Defendants appeal from an adverse judgment in an action for damages growing out of accusations of shop-lifting. The sixth amended complaint upon which the case was tried was in two counts, one charging malicious prosecution and the other false imprisonment. The jury found in favor of defendants on the former, and in favor of plaintiff on the latter, assessing his damages in the sum of $3,500. On motion for new trial the court made a conditional order reducing the amount of damages to $1,500, and the plaintiff accepted the lesser amount. Among the grounds urged for reversal are insufficiency of the evidence and excessive damages.

"The alleged shop-lifting took place between 4:30 and 5 o'clock on Christmas eve in the basement of a department store in Oakland, operated by the defendant S. H. Kress Company. The store was crowded with customers at the time, and according to defendants' evidence, three persons, to-wit, a customer, the store detective Mrs. E. G. Croswell, and her assistant Sidney Schwartz, saw plaintiff pilfer certain articles from the open counters on which they were displayed and put the articles in his overcoat pockets. He was intercepted at the main exit of the store, just as he was leaving, by Mrs. Croswell and Schwartz, and escorted back into the store to a room on the second floor for the purpose of investigating the matter. The testimony is conflicting as to what actually transpired after they entered the room. However, it appears without dispute that plaintiff was there accused of pilfering, and he denied the accusation, stating he had paid for all the articles in his possession. After considerable difficulty, lasting some twenty minutes, during which an attempt was made by Mrs. Croswell forcibly to search him, it was revealed he had in his possession the articles he was accused of having stolen, and he was asked to sign a statement to the effect that he had taken the articles without paying for them. Still insisting he had paid for the articles, he refused to sign the statement. Meanwhile the police had been summoned, and soon after their arrival, at the request of the store management, the police placed plaintiff under arrest and he was taken to the city prison where he was searched, photographed twice and finger-printed; and about 8 o'clock that night he was released through arrangements made by his nephew with the store management. The day after Christmas, Mrs. Croswell

swore to a criminal complaint charging plaintiff with petty theft; but a few weeks later a jury found him not guilty. At the time this happened plaintiff was seventy years of age, and until about a year prior thereto he had been for approximately six years. a deputy constable and process server in Oakland. There is some evidence tending to show that he had been drinking when he entered the store, but he denied that such was the fact.

"There is no substantial conflict in the evidence as to what was said and done on the way to the room to which plaintiff was escorted. Apparently plaintiff made no objection to returning other than to inquire why they wanted him, and in reply Mrs. Croswell told him he knew as well as they. Plaintiff declared, however, he did not know, and just as they were about to ascend the stairway leading to the room he stopped and demanded to know 'what it was all about'. Mrs. Croswell replied, 'Come on, you will learn later', but plaintiff was not inclined to go further, until Mrs. Croswell threatened to call the police. He then stated she need not do so, that he would go along; and he did without further hesitation. There is a sharp conflict, however, as to what happened after they entered the room. According to the evidence introduced on behalf of defendants, the following occurred: Mrs. Croswell asked plaintiff to remove all of the merchandise from his pockets and he refused to do so. She then asked him to produce the string of electric light sockets, which he refused also to do; whereupon she advanced toward him, saying, 'Well, then I will take them out of your pocket'; but when she attempted to do so plaintiff resisted and during the scuffle which followed plaintiff grabbed her arm and twisted it, and then advanced toward her with his arm raised and fist clenched as if he were going to strike her. She called for help and two or three other store employees responded. About the same time, unknown to plaintiff, Mrs. Croswell summoned the police; but before they arrived plaintiff reached in his overcoat pocket, took therefrom the disputed four electric light bulbs and string of sockets, which were not wrapped and for which he had no sales tags, and throwing them on a couch in the room, said, 'Here they are. If you think I didn't pay for them I'll pay for them again.' Mrs. Croswell then asked him to sign a document prepared and used by the Kress company in such

cases, to the effect that he had taken the articles described therein without paying for them; but plaintiff refused to sign the paper, or to give his name or address, telling her it was none of her business. It was about then that police inspectors Jewell and Trowbridge arrived; whereupon Mrs. Croswell told them in plaintiff's presence she had seen him pilfering, and how after entering the room he removed from his pockets the articles they had seen him pilfer and threw them on the couch; she also related to them the conversation which had taken place up to that time. The officers then asked plaintiff if he had any other articles in his pockets and he replied he had not, whereupon they searched him and found the neckties and suspenders. They too were not wrapped, nor did plaintiff have any sales tags therefor. When plaintiff was asked to explain why the disputed articles were not wrapped and he had no sales tags for them, he replied merely that it was strange he could not purchase goods without having them wrapped and accepting sales tags therefor. Plaintiff's name and address were revealed when he was searched by the police, and Mrs. Croswell again sought to have him sign said document, but he refused to do so; whereupon the store manager, C. F. Clifford, who had entered the room while the investigation was going on, told Mrs. Croswell, in plaintiff's presence, that under the circumstances the only thing they could do was to cause his arrest; and accordingly at Mrs. Croswell's request the officers placed him under arrest, and he was taken to the city prison. The officers took with them also as evidence the string of light sockets and the four bulbs plaintiff was accused of having stolen.

"Plaintiff's version as to what transpired after they entered the room was quite different. He stated that as soon as the door was closed Mrs. Croswell began calling him a 'robber', 'thief', and 'skunk', and said she wanted the things he had stolen downstairs; that she fairly screamed the words at him; that he replied he had purchased and paid for everything he had in his possession; that she then attempted forcibly to search him and he pushed her away with his hands, whereupon she screamed for help and ran out of the room; that she returned immediately, accompanied by other store employees and the manager; that she told the manager she had caught him, plaintiff, stealing, and that he refused to give

up the stolen articles. Continuing, he stated he denied having stolen anything, and asked them to take him downstairs to the girl who waited upon him 'and prove he had not paid for the articles', but that they refused to do so; that Mrs. Croswell then produced the document he was asked to sign, but after reading it he refused to do so; whereupon the manager, after hesitating a moment, said to Mrs. Croswell: 'If he don't give up those things we will have to make an example of him.' About this time, so he testified, the police inspectors arrived, and Mrs. Croswell told them he had taken some articles without paying for them and would not allow her to search him; whereupon they searched him and took from his pockets all of the articles in his possession; and shortly afterwards, acting under the manager's instructions, they took him to jail. Plaintiff denied he had placed the sockets and four bulbs on the couch before the inspectors arrived, or that he said he would again pay for them; but in apparent contradiction thereof Inspector Jewell and Clifford both testified that said articles were on the couch when they entered the room, and that the inspectors took from his pockets only the remaining ones. At the trial, in explanation of the possession of the unwrapped articles and the absence of sales tags, plaintiff stated that the neckties and suspenders were wrapped when he purchased them, but that on account of the crowd in the store it was inconvenient for him to carry so many packages so he slipped the articles out of their wrappings into his pocket, and threw the wrappings away; and that upon purchasing the string of light sockets and additional bulbs he told the salesgirl she need not wrap them, that he would put them in his pocket, which he did; and that he had no recollection of having been given sales tags for either.''

The cause of action for false imprisonment is predicated upon the twenty minutes or thereabouts between the time the plaintiff was accosted by Mrs. Croswell near the store entrance and the time he was taken into custody by the police officers, during which interval he was detained and questioned by the store employees. No question of false arrest is involved in the case. The arrest made by the police was relied upon as the basis of the cause of action for malicious prosecution, on which count a verdict was returned in favor of defendants. We are here concerned only with the right of the defendant store to

detain the plaintiff for the purpose of investigation and to secure a confession, after three persons had seen him pilfer articles from among those displayed.

■ Ordinarily, the owner of property, in the exercise of his inherent right to protect the same, is justified in restraining another who seeks to interfere with or injure it. (11 R. C. L. 805.) However, there seems to exist considerable confusion in the cases as to whether probable cause is a defense in false imprisonment cases involving misdemeanors. The broad statement occasionally appears to the effect that probable cause is no defense in actions for false imprisonment. (*Nelson* v. *Kellogg,* 162 Cal. 621 [123 Pac. 1115, Ann. Cas. 1913D, 759]; *Neves* v. *Costa,* 5 Cal. App. 111 [89 Pac. 860].) The cited cases involved unlawful arrests under the authority of illegal process issued in civil actions. In such instances, as in all cases involving solely the legality of the process, it is obvious that probable cause is not pertinent to any issue in the case. Because of like irrelevancy, the statement may properly be made in cases of illegal arrests upon suspicion by a private person where, by statutory authority or otherwise, he is permitted to make such an arrest only when the offense is being committed in his presence. (*Palmer* v. *Maine Central R. Co.,* 92 Me. 399 [42 Atl. 800, 69 Am. St. Rep. 513, 44 L. R. A. 673]; *Pandjiris* v. *Hartman,* 196 Mo. 539 [94 S. W. 270]; *Harris* v. *Terminal R. Assn. of St. Louis,* 203 Mo. App. 324 [218 S. W. 686].) However, those authorities which hold, where a person has reasonable grounds to believe that another is stealing his property, as distinguished from those where the offense has been completed, that he is justified in detaining the suspect for a reasonable length of time for the purpose of investigation in a reasonable manner. (*Jacques* v. *Childs Dining Hall Co.,* 244 Mass. 438 [138 N. E. 843, 26 A. L. R. 1329; *Fenn* v. *Kroger Grocery & Baking Co.,* (Mo.) 209 S. W. 885; *Sweeney* v. *F. W. Woolworth Co.,* 247 Mass. 277 [142 N. E. 50, 31 A. L. R. 311, 314; 25 Cor. Jur. 471) must necessarily proceed upon the theory that probable cause is a defense. And this is the law because the right to protect one's property from injury has intervened. In an effort to harmonize the individual right to liberty with a reasonable protection to the person or property of the defendant, it should be said in such a charge of false imprisonment, where a defendant had probable

cause to believe that the plaintiff was about to injure defendant in his person or property, even though such injury would constitute but a misdemeanor, that probable cause is a defense provided, of course, that the detention was reasonable. As already indicated, the rule should be different if the offense believed to be in the process of commission relates to the person or property of another. And, of course, we may properly refer to probable cause as a defense in false imprisonment cases as constituting that justification for the arrest which may be announced by statutory enactment. With the foregoing explanation, the authorities are harmonized and it is made clear that probable cause is a justification for the detention of the plaintiff in the instant cause.

What is probable cause, as has been often announced, is not a question of fact for the jury, but one of law for the court, to be decided in accordance with the circumstances at the time of the detention, unhampered by the outcome of the charge against the plaintiff of the public offense or by the conclusions of the trial court. (*Davis* v. *Pacific Tel. etc. Co.*, 127 Cal. 312, 320 [57 Pac. 764, 59 Pac. 698] ; *Mackie* v. *Ambassador Hotel etc. Corp.*, 123 Cal. App. 215 [11 Pac. (2d) 3] ; *Allen* v. *McCoy*, 135 Cal. App. 500 [27 Pac. (2d) 423, 28 Pac. (2d) 56] ; *Van Fleet* v. *West American Ins. Co.*, 5 Cal. App. (2d) 125 [42 Pac. (2d) 378, 43 Pac. (2d) 557].) So determined, it appears from the record in this case that the defendants were not only justified in detaining plaintiff, but also, under the evidence, would have been justified in arresting plaintiff under the authority of subdivision one of section 837 of the Penal Code.

There yet remains the question of whether the detention was reasonable. The consideration of this problem must be premised by the observation, which must be kept in mind at all times during our examination of the question, that the defendants were entitled to use a reasonable amount of compulsion in order to effect that restraint. In our opinion, the evidence in this case does not disclose an unreasonable compulsion or detention. The respondent was detained for the period of about twenty minutes. The compulsion used was a threat of arrest, which arrest the jury found was not improper. The defendants testified that Mrs. Croswell attempted to take the articles out of his pocket, but that he, by the use of force,

prevented that act. The words of reproach which plaintiff testified were applied to him are not properly to be considered in an action of this character. The request to sign a statement of his acts was not improper, under the circumstances. In fact, the only way in which defendants could protect their property, if taken, was to ask plaintiff to restore, which if done, in and of itself, amounted to a confession. It nowhere appears, except for the threat of arrest, concerning which we have already commented, that plaintiff might not have left the premises at any time.

No other points require discussion.

Judgment reversed.

Seawell, J., Shenk, J., Curtis, J., Conrey, J., Langdon, J., and Waste, C. J., concurred.