[Civ. No. 14774.  Second Dist., Div. One.  Nov. 2, 1945.]

HOWARD L. HILL, Appellant, v. VICTOR J. NELSON, Respondent.

Arthur Garrett for Appellant.

No appearance for Respondent.

DORAN, J.—This is an action for damages for false imprisonment. The jury returned a verdict in favor of the respondent and the appeal is from the judgment entered in conformity therewith.

On August 1, 1941, the respondent Victor J. Nelson, as general contractor, was engaged in constructing an airfield and buildings for the Polaris Flying Academy, located about five miles west of Lancaster, California. The project was designed for the training of army air corps pilots, and some air corps personnel as well as army engineers and inspectors, were then on the premises. The buildings, which included training camps, hangars, housing, hospitals, mess halls, etc., were up and in course of construction, and about 300 men were then employed on the job under the supervision of the respondent. Entrance to the project was afforded by a dirt road some 250-300 feet from the highway, running across a filled ditch.

Signs, such as, "Defense project, private property, keep off," and "Trespassers will be prosecuted" were posted near the entrance. There was some conflict in the testimony as to whether there was a fence enclosing the project at this time

or whether part of such fence had been removed during the construction work.

At the time in question, August 1, 1941, a picket line was being maintained near the entrance to the Polaris Flying Academy, and the plaintiff-appellant Howard L. Hill had been sent there as a picket captain, organizer, assistant business agent and paymaster. Appellant arrived there about 7 a. m. and about 8 a. m. a truck and trailer loaded with lumber for the project approached the entrance. It appears that appellant Hill first yelled at the driver of the truck stating that there was a picket line, and when the truck failed to stop, appellant jumped on the running board and rode the truck into the property of the Polaris Flying Academy, a distance of some 150 or 200 feet. According to the testimony of the respondent, Hill ''was jerking and pulling at the driver, together with yelling at him.'' This testimony was corroborated by Charles Fleishman who was employed on the Polaris job, and by Charles Carsten, carpenter foreman. The appellant testified that he did not know where the property line was, that he did not see any fence or signs, and that he did not jump on the truck or interfere with the driver. The defendant Nelson, who had witnessed the episode, and who had previously warned the pickets to remain outside the property line, then ''went over and asked Mr. Hill to get down off the truck and to come into the office, that he was under arrest. . . . I told him he was under arrest for disturbing the peace and for trespassing.'' Hill accompanied Nelson into the office and the latter telephoned the sheriff at Lancaster. Hill was not handcuffed and ''just sat there'' in the office until about 8:30 a. m. when the officers arrived. Nelson testified: ''I told Stockbridge that he had been trespassing and creating a disturbance, and told him I wanted him arrested, and he asked Mr. Hill if that was true, and Mr. Hill says, 'Yes, I guess it is, I must have let my job get away with me,' or words to that effect.'' The appellant was then taken to Lancaster and as the judge was not there, Hill was taken by the officers to Newhall, arriving about 9:30 or 10:00 a. m. Plaintiff's attorney, Arthur Garrett, having been summoned, drove to Newhall about noon, and after a conference with the Justice of the Peace the latter refused to issue a complaint and appellant was then released.

In the appellant's brief it is argued that, (I) the evidence is insufficient to support the verdict in favor of

the defendant Nelson; (II) the court misdirected the jury in matters of law. Appellant's first assignment is predicated on the proposition that "the only circumstances under which one person may arrest another for a misdemeanor without a warrant is when the misdemeanor is committed in the presence of the person so making the arrest," and that the appellant Hill had committed no such misdemeanor in Nelson's presence.

Penal Code, section 837 provides that "A private person may arrest another: 1. For a public offense committed . . . in his presence. 2. When the person arrested has committed a felony, although not in his presence. 3. When a felony has been in fact committed, and he has reasonable cause for believing the person arrested to have committed it."

Appellant's argument maintaining the illegality of the arrest is based upon the premise that the only possible offense committed by appellant in respondent's presence, was that of trespass as defined by section 602(j) of the Penal Code; that since appellant did not trespass "for the purpose of hunting, shooting, killing or destroying any animal, or bird on such lands," as mentioned in the latter part of such statute, no "public offense" was committed and therefore the restraint and arrest were unwarranted. However, the record reveals that the offense of disturbing the peace, as defined by section 415 of the Penal Code was, in fact, the accusation made by the respondent Nelson both to the appellant Hill on making the arrest, and upon arrival of the officer Stockbridge. Likewise, the officer's report, which was read in evidence, contained the following corroborative statement: "Viol. 415PC—Distm the Peace. (citizen Arrest)."

The Polaris Flying Academy under construction, was a "Defense Project," so designated by signs, to be used for the training of army air corps pilots. The United States flag was flying, visible from the road. "Army engineers, army inspectors and some air corps personnel" were on the premises at the time in question, and respondent Nelson had been given definite instructions "to keep everyone off the property who was not concerned with the construction or with the progress of it." There was no evidence of malice or bad faith on the part of defendant.

One aspect presented by appellant's conduct, is described by an instruction which the appellant conceded to be "a correct statement of the law," namely that "A person who intentionally and maliciously interferes or tampers with, or

attempts to interfere or tamper with real or personal property with reasonable grounds and belief that such act will hinder, delay or interfere with the preparation of the United States or of any of the states for defense or for war, or with the prosecution of war by the United States, is guilty of a public offense.''

Appellant contends that ''There is no evidence that the premises were enclosed by a fence.'' As hereinbefore mentioned, the record presents some conflict in reference to this matter. There was, however, substantial testimony to the effect that the boundaries of the project were clearly marked by fences, signs and survey lines, and any conflict has now been resolved by the jury's finding against appellant's contention. The appellant's own testimony concerning signs and fences was, in fact, equivocal and uncertain, for example: ''To be truthful, I can't swear that I can say anything about either the signs or this fence around there, it might be something I had seen some other time, I don't know.'' Moreover, in reference to the charge of disturbing the peace, the matter of fencing is not of importance.

That the evidence supports the verdict, there can be no question.

It is also urged in appellant's brief that a reversal is warranted for the reason that ''The court misdirected the jury in matters of law.'' One of these assignments of error is that the jury was instructed as follows: ''If the plaintiff Howard L. Hill was actually violating a state law at the time of his arrest . . . then his arrest was justified''; the contention being that the term ''public offense'' should have been employed rather than the expression ''violating a state law.'' While it is true that section 837 of the Penal Code authorizing arrests without warrant, makes use of the term ''public offense,'' and that, as urged by appellant, certain ''state laws'' relate to civil rather than criminal jurisprudence, it seems clear that the terminology used in the instruction cannot have resulted in prejudice to the appellant. When considered in connection with the other instructions given, any error in reference to this matter must be deemed harmless, particularly in view of the evidence hereinbefore mentioned, tending to show that the appellant Hill did commit one or more ''public offenses'' in the presence of the respondent.

Error is also predicated upon the court's instruction concerning trespass by entering lands enclosed by a fence, ap-

pellant maintaining that "even if it had been correct, (it) would not have been warranted by the evidence . . . (showing) that the land in question was not enclosed by a fence." As already pointed out, although there was some conflict as to this matter, substantial evidence was presented on which the jury could reasonably conclude that the land was fenced.

The court further instructed that "If a person commits a trespass . . . the owner, occupant or person in charge . ... is justified either in ejecting such intruder . . . , or in holding him and calling upon the officers of the law to take the intruder into custody for an investigation." Appellant again complains that this was erroneous as apparently justifying a citizen arrest of a "civil trespasser." But it is to be observed that the instruction just quoted says nothing whatsoever about arrest, and is apparently consistent with the holding in *Collyer* v. *S. H. Kress & Co.*, 5 Cal.2d 175, 180 [54 P.2d 20], which says, "Ordinarily, the owner of property, in the exercise of his inherent right to protect the same, is justified in restraining another who seeks to interfere with or injure it." No prejudice to the appellant is seen in the giving of this or other instructions on the subject of trespass.

The instruction that "A person who wilfully and wrongfully commits any act which seriously disturbs or endangers the public peace or health is guilty of a public offense," is conceded by the appellant to be "not an incorrect statement of the law, (but) it was not warranted by the evidence in this case." When it is considered that appellant's conduct included jumping on a truck loaded with lumber, "jerking and pulling at the driver," as the latter was delivering material to a defense project on which some 300 men were then working, some of them "working right alongside" the path of the truck, such instruction cannot be said to have been unwarranted by the evidence.

It is argued by appellant that the trial court committed reversible error in that the instructions "submitted to the jury, as a matter of fact, the question whether the respondent had probable cause for believing the appellant guilty of a public offense." In *Collyer* v. *S. H. Kress & Co.*, 5 Cal.2d 175, 181 [54 P.2d 20], cited by appellant, plaintiff was arrested by the manager of a retail store, accused of shoplifting, prosecuted and acquitted. The court there said: "What is probable cause, as has been often announced, is not a question of fact for the jury, but one of law for the

court, to be decided in accordance with the circumstances at the time of the detention, unhampered by the outcome of the charge against the plaintiff of the public offense or by the conclusions of the trial court.'' However, in that case as in this, the court concluded that the defendants were justified in detaining the plaintiff, and reversed a judgment for the latter. In 3 California Jurisprudence 120, 121, the rule is stated as follows: ''When the facts in reference to the alleged probable cause are admitted or established beyond controversy, then the determination of their legal effect is absolute, and the jury are to be told that there was or was not probable cause, as the case may be. When, however, the facts are controverted, and the evidence is conflicting, then the determination of their legal effect is necessarily hypothetical, and the jury are to be told that if they find the facts in a designated way, then that such facts, when so found, do or do not amount to probable cause.'' The above quotation appears to embody a correct statement of the law.

The instructions given in the instant case defined probable cause, telling the jury that ''Probable cause is a defense in actions of this kind and if you believe from the evidence before you that the person making the arrest had probable cause to believe the plaintiff guilty of a public offense, then there existed probable cause for the detention of the plaintiff for a reasonable time for the purpose of investigation in a reasonable manner.'' It is doubtless true that, under the rule hereinbefore mentioned, the instructions should have informed the jury in more detail, just what facts would or would not constitute probable cause in the particular case, leaving it to the jury to decide whether such facts existed. Such error, however, must be deemed harmless in the present case for the reason that, as heretofore indicated, the evidence discloses that the appellant's acts, committed in the presence of the respondent, afforded adequate and probable cause to believe that appellant was then and there committing a public offense or offenses which demanded immediate restraint of the actor. In other words, had the trial court been more explicit on the subject of probable cause, or had the court decided the question as a matter of law, the instructions then given would have been much less favorable to the appellant's case than were the instructions complained of.

Neither in respect to the sufficiency of the evidence to support the verdict, nor in reference to the instructions given,

can appellant's contentions be sustained. The judgment appealed from is therefore affirmed.

York, P. J., and White, J., concurred.

A petition for a rehearing was denied November 29, 1945, and appellant's petition for a hearing by the Supreme Court was denied December 20, 1945.