[136 C.A.2d 1; 288 P.2d 275]

[Civ. No. 16442.   First Dist., Div. Two.   Oct. 3, 1955.]

LYNN ROBERSON, a Minor, etc., Respondent, v. J. C. PENNEY COMPANY (a Corporation), Appellant.

Campbell, Custer, Warburton & Britton, Alfred B. Britton, Jr., and W. R. Dunn for Appellant.

Boccardo, Blum & Lull and David S. Lull for Respondent.

KAUFMAN, J.—This is an appeal from an order granting plaintiff's motion for a new trial following a jury verdict in favor of defendant in an action for false imprisonment.

The court stated that the motion for new trial was granted on the ground of error of law, in that the court in its instructions submitted to the jury the question of probable cause for the detention of the plaintiff by the employee of defendant, whereas it is settled that probable cause is a matter of law to be determined by the court, and the jury is to be told of the court's determination in its instructions. (*Collyer* v. *S. H. Kress & Co.*, 5 Cal.2d 175 [54 P.2d 20]; *Aitken* v. *White*, 93 Cal.App.2d 134 [208 P.2d 788].) The court further noted that while instructions on this matter had been submitted by both parties, each of said instructions had been clearly erroneous. Defendant and appellant contends that the order granting a new trial is erroneous, first, because respondent is not entitled to complain of the error assigned by the court,

having failed to have offered a correct instruction and having requested that the matter of law as to probable cause be submitted to the jury as a question of fact; secondly, that in any event it appears as a matter of law that there was, probable cause for the detention of respondent.

Plaintiff and respondent, Lynn Roberson went shopping in Palo Alto with her friend Paula Risted on October 6, 1951. Respondent was then a girl of 12 years of age. At Woolworth's she purchased a square head scarf, but was not furnished with a sales slip. After leaving the store she threw away the bag and put the new scarf in the pocket of her jeans. She was wearing an old scarf on her head at the time. The girls then went into defendant's store to compare the scarves displayed there. They testified that they did not pick up the scarves, but simply pushed them about to see what colors they were. Respondent did not take the new scarf out of her pocket to compare it with those on the counter. She then left the counter and walked with her companion over to a mirror where she took the new scarf out of her pocket and tied it on her head, placing the old scarf in her pocket. The girls then walked back past the scarf counter, went out of the store and stood in front of it by a parking meter waiting for Paula's father to arrive.

Shortly after leaving the store respondent was accosted by William Shurtz, an employee of appellant. She testified that he said: "Where did you get that scarf?" She replied that she got it at Woolworth's. He then grabbed her arm and told her to come into the store. She was frightened and went with him. He asked for her sales slip. She said she didn't have one because Woolworth's didn't give sales slips. He told her to take the scarf off, and he then compared it with scarves on the counter. She stated that he told her that if he caught her again in the store with anything in her hand and no sales slip, he would take her into the office. Then he put her scarf in a bag and said "O.K." As she was walking out of the store he called out, "Well, if you didn't lift it here you lifted it some place else." Respondent's schoolmate heard of the incident, and it caused her embarrassment.

Appellant's employee, Chris Jordan, a saleslady who was stationed in a department on the balcony overlooking the first floor noticed respondent and her companion as they walked up to the scarf counter. She said that she saw them picking up the scarves and looking at them. Respondent went to a mirror which was hidden from Mrs. Jordan's view. When

she came back into view she was wearing a new scarf. Mrs. Jordan then walked down from the balcony and told Shurtz that "he should have somebody watching the front a little more because they were so terrifically busy; but the girls had stood there a long time trying scarves or looking at them, and that we don't know that they took one." She told him that one of the girls had a new scarf on her head when she went out. On cross-examination, Mrs. Jordan stated that when the girls left the scarf counter for the drinking fountain, before going to the mirror, one of them had a new scarf in her hand and when she returned she was wearing the new one and carrying the old one in her hand. This was in direct conflict with respondent's testimony that the new scarf was in her pocket until she put it on her head, at which time she placed the old·one in her pocket.

Shurtz was a buyer for appellant and the scarf counter was in his department of the store. He could see the scarf plainly when he saw respondent with it outside the store. He stated that she had the new scarf in her hand. Upon examining it inside the store at the scarf counter he conclusively determined that there was no similarity between it and appellant's merchandise. There were differences of color, design and weight. He at no time asked her if she had taken the scarf from appellant's store. As she was leaving, he admonished her to keep merchandise in a bag in the future. Shurtz denied that he had taken hold of respondent or touched her.

Appellant's first·contention on appeal—that respondent is not in a position to complain of error in the instructions given —may be disposed of briefly. Appellant does not deny that the instructions given were erroneous. They left the question of probable cause up to the jury as a question of fact. ■ It is well established that the issue of probable cause is a matter of law for the determination of the trial court. ■ Where there is a conflict in the evidence relating to probable cause, then the jury must be told that if they find certain facts to be true, then such facts do or do not amount to probable cause. (*Hill* v. *Nelson*, 71 Cal.App.2d 528, 534 [162 P.2d 927]; *Aitken* v. *White*, 93 Cal.App.2d 134, 139 [208 P.2d 788]; *Collyer* v. *S. H. Kress & Co.*, 5 Cal.2d 175, 181 [54 P.2d 20].)

■ Appellant argues that respondent cannot complain of invited error, citing *Nevis* v. *Pacific Gas & Elec. Co.*, 43 Cal. 2d 626 [275 P.2d 761]. However, that appeal was from the judgment and not from an order granting a new trial. In *Springer* v. *Sodestrom*, 54 Cal.App.2d 704, 707 [129 P.2d 499],

it is said: ''There can be no doubt that under some circumstances the offering of instructions on an issue constitutes a waiver, but that rule does not restrict the power of the trial court to grant a new trial. If error appears in the record, the power of the trial court is not limited by the conduct of the parties in inviting such error. On an appeal from a judgment, defendant's position would be tenable, but not so when an appeal is from an order granting a new trial.'' (And see *Conroy* v. *Perez,* 64 Cal.App.2d 217 [148 P.2d 680].)

It is contended that error was committed in granting a new trial because respondent's own evidence shows as a matter of law that there was probable cause for her detention for investigation. ▮ If, of course, there is no substantial evidence to support a judgment in favor of the moving party, an order granting a new trial must be reversed on appeal. (*Henningsen* v. *Howard,* 117 Cal.App.2d 352, 355 [255 P.2d 837].) ▮ Probable cause has been defined as ''a suspicion founded upon circumstances sufficiently strong to warrant a reasonable man in the belief that the charge is true.'' Here, appellant says, respondent's testimony shows that appellant acted reasonably for the protection of its own property, having reasonable grounds to suspect that a theft had been committed. In several cases cited by appellant, *Redgate* v. *Southern Pac. Co.,* 24 Cal.App. 573 [141 P. 1191], *Aitken* v. *White,* 93 Cal.App.2d 134 [208 P.2d 788], *Allen* v. *McCoy,* 135 Cal.App. 500 [27 P.2d 423, 28 P.2d 56], *Lowry* v. *Standard Oil Co.,* 54 Cal.App.2d 782 [130 P.2d 1], crimes actually had been committed and information and clews led directly to the plaintiff in each of those cases. In *Bettolo* v. *Safeway Stores, Inc.,* 11 Cal.App.2d 430 [54 P.2d 24], plaintiff was actually seen by two clerks concealing the merchandise in his pockets, although it was afterward found near the checking counter, and was not on plaintiff's person when he was searched. Likewise in *Collyer* v. *Kress, supra,* plaintiff was seen taking the merchandise from the counter and placing it in his pockets. If such evidence were uncontradicted, then it would certainly constitute probable cause as a matter of law. ▮ In the present case, however, respondent testified that she did not pick up any of the scarves in her hand. There is nothing in her testimony (or in defendant's testimony, for that matter) to show that they were similar to the scarf worn out of the store by respondent other than perhaps in size and shape. Respondent said that she did not take her new scarf out of her pocket until she arrived at the mirror, and that

she immediately put her old scarf into her pocket. The girls then walked out of the store and remained standing in front of it. Without more, it is difficult to see how this conduct can be said to constitute cause as a matter of law.

It is true that Miss Jordan testified that the girl had a new scarf in her hand as she walked from the counter to the fountain and then to the mirror, and that when she returned she had the old scarf in her hand. This testimony was in conflict with respondent's, and might be said to constitute probable cause sufficient to justify investigation if the new scarf resembled appellant's merchandise.

Since the evidence in this case does not without conflict and as a matter of law establish probable cause for the detention, the trial court was correct in granting a new trial for the error it had committed in instructing the jury.

The order granting a new trial should therefore be and it is hereby affirmed.

Nourse, P. J., and Dooling, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 30, 1955.