[Civ. No. 23107.   Second Dist., Div. Two.   Dec. 1, 1958.]

MARY GIBSON, Respondent, v. J. C. PENNEY COMPANY, INC. (a Corporation) et al., Appellants.

Schell, Delamer & Loring for Appellants.

C. A. Falconer for Respondent.

FOX, P. J.—This is an action for damages for false imprisonment. The jury returned a verdict in favor of plaintiff for $5,000. The defendants have appealed from the judgment and the order denying their motion for judgment notwithstanding the verdict.

On December 19, 1955, plaintiff, 22 years of age and married, and her sister Thelma, went to the J. C. Penney store in Inglewood during the course of their Christmas shopping tour. Plaintiff desired to purchase a pair of pedal pushers as a gift for Thelma. They found such merchandise displayed in a haphazard fashion on a table on the mezzanine floor. There was no clerk in attendance at the table. They selected a green and a pink pair in Thelma's size. Plaintiff put both pairs over her arm and inquired of a sales girl whether there was a dressing room where they could be tried on. The clerk directed them to a dressing room, to which they repaired, where Thelma tried on the pedal pushers. Upon leaving the dressing room the young women returned to the display table, replaced the green pair, sought out a clerk and purchased the pink pair. They then joined the gift wrapping line where, after a wait of some 10 or 15 minutes, they left the pedal pushers to be gift wrapped. After walking away from this line a few feet, the young women were accosted by someone from behind who said he was from the Inglewood Police Department. They turned around to face defendant Plummer, who identified himself by name and exhibited a police officer's badge that had "Inglewood" written across it. Defendant Plummer then told them to take everything out of the shopping bag and show him the sales slips. Plaintiff and her sister had some 20 small packages in the bag. They took each package out, placed it on the floor and produced a sales slip for each one. Plaintiff testified that she "was scared to death and nervous." Plaintiff thought they were under arrest when Plummer showed them his badge and was afraid they would be taken to the police station. It was for this reason that she followed Plummer's orders. No pedal pushers were found in the bag and the packages were then replaced. About 10 minutes were consumed in this phase of the incident, during which numerous people were passing by. Plummer then requested them to come down front where he would have a sales girl check to see whether they had on a pair of pedal pushers under their clothing. Plaintiff was still frightened. On the way, the young women saw a neighbor of Thelma's who sought to engage them in conversation. This was cut short abruptly by

Plummer's command "up front," though it does not appear that the neighbor heard this. Plummer directed plaintiff to a dressing room to which he also sent a sales girl. Plaintiff removed her blouse completely and the black pedal pushers that she was wearing to about the knees, so that the sales girl could see she did not have any green pedal pushers under them. Plaintiff was told this was sufficient; that she did not have to take all her clothes off. Plaintiff complied with these directions because of her belief that she was under arrest or would be taken to jail if she did not comply. The clerk reported to Plummer that the young women did not have the pedal pushers on. Plummer then said he was sorry to have detained the plaintiff and her sister. This entire incident consumed approximately 40 minutes. When plaintiff reached her car, where her aunt was waiting, she was upset, felt nauseated and slightly faint. Plaintiff, Thelma and their aunt then returned to the store where they reported this incident to the assistant manager, Mr. Nelson. They learned from him that Plummer was a regular member of the Inglewood Police Department but that he was working for Penney's on his time off duty during the Christmas shopping season. Plaintiff was still shaking when she reached her home and was unable to complete her Christmas shopping that year because she was not up to it, she was "nervous and upset." This incident ruined her Christmas. Plaintiff testified that she does not yet shop alone unless it is in a store where she is well known because she still gets upset from the memory of this experience and feels that people are watching her. Either her sister, mother or aunt accompany her on shopping tours. When plaintiff's husband came home from work that afternoon he found her pale, faint and in a state of shock. She was suffering from a headache. She did not sleep well that night nor for several nights thereafter. At times she mumbled in her sleep, according to her husband. When plaintiff recalls this incident she has severe headaches and becomes nervous and upset. Although she had not had headaches prior to this experience, thereafter, for a period of three months, she had very bad headaches about three times a week. They start at the top of her head and work down to the back of it. They were so severe on some occasions that she would feel like crying. For relief, she rested and took bufferin. At the time of trial, a year and eight months after the incident, she was still having headaches about once a month. She did not, however, consult a doctor. Plaintiff had suffered a severe burn

that covered the greater portion of her body when she was a child. As a result of this disfigurement, she disliked to disrobe in the presence of other people, particularly strangers. She was embarrassed to disrobe before the sales girl. Plaintiff's husband testified that since this incident his wife had withdrawn from friends and declined to engage in social activities.

Plummer was in plain clothes. He noticed plaintiff and her sister because of the manner in which they were dressed and the fact that they had a shopping bag. He kept them under observation. He stated that he observed one of them put two pairs of green pedal pushers and one pair of pink pedal pushers over her arm; that the girls then walked directly into the dressing room; that when they came out they had one pair of green pedal pushers and one of pink; that they walked back to the counter where they had previously picked up the pedal pushers, laid one pair down and took the other over to a clerk. Plummer further testified that the girls passed within about 20 to 25 feet of him on their way to the dressing room but he did not observe how many pairs of pedal pushers they had as they passed him. When the girls left the gift wrapping line and started to walk back toward the front of the store, Plummer testified he ''stopped them''; told them he was ''a police officer''; showed them his badge; directed them to step out of the main aisle and led them to a point two aisles away in between long rows of dress racks. Plummer did not ask the salesgirl how many pairs of pedal pushers plaintiff bought nor did he go into the dressing room to see whether the supposedly missing pair was left there before stopping the plaintiff. Upon not finding the extra pair of pedal pushers in the bag, Plummer, according to his testimony, asked them whether they would mind being searched by one of the women clerks to see whether they had the pedal pushers on. He stated they were agreeable to this procedure.

As grounds for reversal, defendants challenge the sufficiency and correctness of the instructions given by the trial court and the amount of the judgment.

Defendants' first ground for reversal is that the trial court committed reversible error in submitting to the jury, as a question of fact, the determination of whether defendants had probable cause to detain the plaintiff. ■ It is well settled that the presence or absence of probable cause is to be determined by the court as a matter of law and not by the jury as a question of fact. (*Collyer* v. *S. H. Kress & Co.*, 5 Cal.2d

175, 181 [54 P.2d 20], *Roberson* v. *J. C. Penney Co.*, 136 Cal. App.2d 1, 4 [288 P.2d 275]; 3 U.C.L.A. L. Rev. 269; *Aitken* v. *White*, 93 Cal.App.2d 134, 141 [208 P.2d 788].) ■ The applicable rule where there is a conflict in the evidence with respect to probable cause is stated in the Aitken case, *supra*, at page 141 as follows: ''And where, as here, the evidence was in conflict, it was the duty of the court to instruct the jury as to what facts, if established, would constitute probable cause, and only the question as to the existence of such facts should have been submitted to them. [Citation.]'' ''The approved method is for the court to instruct the jury that if they find and determine certain questions of fact properly submitted to them to be true or untrue their verdict must be for plaintiff, or for the defendant, as the case may be.'' (*Miller* v. *Lee*, 66 Cal.App.2d 778, 786 [153 P.2d 190].)

■ The court instructed the jury that ''Probable or reasonable cause that will justify one in arresting another on a criminal charge requires that there be a state of facts that would lead a man of ordinary care and prudence to believe, or entertain an honest or strong suspicion that the person arrested is guilty. Unwarranted suspicion is not sufficient to justify an arrest.'' This was a correct statement as an abstract proposition of law, but as an instruction to the jury without further elaboration, was faulty in that it did not require the jury to determine specific facts, the existence or nonexistence of which would or would not constitute probable cause as a matter of law. (*People* v. *Kilvington*, 104 Cal. 86, 89-90 [37 P. 799, 43 Am.St.Rep. 73]; *Aitken* v. *White, supra*; *Hill* v. *Nelson*, 71 Cal.App.2d 528, 534 [162 P.2d 927].)

■ However, the court also instructed the jury as follows: ''If you find from all of the evidence in this case that the testimony of the defendant Robert Plummer was true, then you must find that there was probable cause or reasonable grounds for proper detention of plaintiff. If you find that plaintiff and her sister did in fact take three pairs of pedal pushers from the counter or that they took only two pairs of pedal pushers, but that it reasonably appeared to Officer Plummer that it was three, then you must find that he had probable grounds for detaining plaintiff.'' This instruction was proper and in complete harmony with the foregoing authorities for the jury was instructed solely as to what facts, if established, would constitute probable cause. This instruction is to be distinguished from an instruction which leaves to the jury not only the resolution of a question of fact but

the task of drawing inferences and conclusions from a person's state of mind in order to decide the question of fact. This latter type of instruction is clearly improper. (See *People* v. *Kilvington, supra; Aitken* v. *White, supra; Hill* v. *Nelson, supra.*)

Any misconception on the part of the jury as to their function in the premises was eliminated by the giving of the second instruction by the trial court which specifically limited the jury to a resolution of factual issues.

The defendants next complain of the failure of the court to fully instruct the jury as to the elements of the tort of false imprisonment. Specifically, defendants contend that the element of restraint was not sufficiently identified. An examination of the instructions reveals that they were sufficient to inform the jury that restraint is a necessary element of false imprisonment.

Further complaint is made on the grounds that the court failed to adequately instruct on (a) the burden of proof, (b) the definition of evidence and the effect of presumptions and inferences, and (c) the defense of consent. As to instructing on the burden of proof, BAJI No. 21 was given and this is sufficient. There was no need to give BAJI No. 21-A or 21-B, as defendants requested, for they are merely substitutes for No. 21. The record discloses no necessity to instruct on the effect of presumptions and inferences and, therefore, there was no error in failing to so instruct. Lastly, the instructions given were sufficient to convey the idea that if plaintiff voluntarily consented to the complaint of acts she could not recover.

Defendants contend that the damages were excessive as a matter of law. Since the jury obviously accepted the plaintiff's version of the occurrence and the resulting injuries, as set forth in the statement of facts, this court cannot say that the verdict and judgment of $5,000 was excessive as a matter of law. ■ Plaintiff was entitled to damages in an amount which would compensate her for all detriment proximately caused by the defendants' acts, whether it could have been anticipated or not. (Civ. Code, § 3333.) ■ The determination of this amount is for the jury and, absent a showing that the verdict resulted from passion or prejudice rather than honest deliberation, the verdict should not be disturbed. (*Gomez* v. *Scanlan,* 155 Cal. 528, 533 [102 P. 12]; *Coyne* v. *Nelson,* 107 Cal.App.2d 469, 475 [237 P.2d 45].) ■ In the *Gomez* case, *supra,* the court stated (p. 533): ''The amount

of money which will compensate one for an unwarranted restraint of his person is not the subject of exact computation. . . . In cases of this kind the extent to which the allowance may go must, in a large measure, be left to the sound discretion of the jury. A court is justified in overturning a verdict as excessive only where its amount is 'obviously so disproportionate to the injury proved as to justify the conclusion that the verdict is not the result of the cool and dispassionate discretion of the jury.' (Citation.)'' ▇ A reviewing court should not interfere with an award of compensatory damages unless ''the allowance is so grossly disproportionate to a sum reasonably warranted by the facts as to shock the sense of justice and raise a presumption that it was the result of passion and prejudice.'' (*Coyne* v. *Nelson, supra,* p. 475.) In the instant case, the headaches, embarrassment, emotional distress, humiliation, and anxieties suffered were properly considered by the jury in affixing damages and the $5,000 award does not appear grossly disproportionate or shocking in view of the actual injuries sustained by plaintiff.

Defendant cites *Bettolo* v. *Safeway Stores, Inc.,* 11 Cal. App.2d 430 [54 P.2d 24], where an award of $1,500 was held excessive as a matter of law. That case, however, is clearly distinguishable from the case at bar in that the plaintiff in *Bettolo* suffered no actual damages of any sort and was therefore limited to nominal damages, while the plaintiff in the instant case suffered actual damages.

The order and judgment are affirmed.

Ashburn, J., and Herndon, J., concurred.