[Civ. No. 19709.    First Dist., Div. Three.    Dec. 12, 1961.]

GORDON ROGER COLE, a Minor, etc., et al., Plaintiffs and Appellants, v. FELIX GARNER JOHNSON et al., Defendants and Respondents.

Appelbaum, Mitchell & Bennett for Plaintiffs and Appellants.

Reaves & Watson, Harlow P. Rothert and Cushing, Cullinan, Hancock & Rothert for Defendants and Respondents.

DEVINE, J.—Plaintiffs appeal from (1) a judgment of nonsuit which was rendered in favor of defendants Johnson and Schmitt, and (2) a directed verdict in favor of the other defendants, in a case of false arrest. Johnson had identified Cole, one of the plaintiffs, as a robber, Schmitt was Johnson's partner in business, and the other defendants are police officers who had participated in an arrest of plaintiffs following identification.

On March 12, 1959, defendant Johnson was working as a bartender at the B & B Gardens in Richmond, at about 1 o'clock in the morning. A young man who, in response to Johnson's question whether he was 21 replied in the affirmative, entered the bar, ordered and drank a bottle of beer, waited until the other customers had departed, and, as Johnson was about to lock the door, drew a gun against his back. He ordered Johnson to get the strongbox and, when this was done, helped himself to the contents of about $123. The robber held the gun on Johnson as he ran out of the door. Johnson heard a car start, and called the police. When the police arrived Johnson described the robber as a white male, about 23 or 24 years old, 5 feet 6 inches or 5 feet 7 inches tall, weighing about 140 pounds, and wearing a blue and white or a gray sport shirt with fine pin stripes. The testimony as to the description of the robber's hair, as given by Johnson, is slightly conflicting; Johnson testified that he gave the description as between a light and dark-colored hair, but the police testified that Johnson's description was that the robber had dark, curly hair.

Report of the robbery and description of the robber were broadcast by the police and Officer Chaney of the San Pablo Police Department, one of the defendants, who was in his patrol car, having heard the report, saw the vehicle driven by plaintiff McCallister, in which Cole was a passenger, driving at a speed of about 15 to 25 miles per hour along Market Street in San Pablo. Plaintiff Cole, Chaney testified, turned back and looked at the patrol car almost continuously. The officer stopped the car and interrogated the occupants. Cole was wearing a sport shirt with very narrow stripes on a blue background. The officer searched the vehicle, looking in particular for a gun, but found none. Other police were summoned and Johnson, the victim of the robbery, was brought to the scene in a police car.

From the time of the arrival of Johnson until the time of the arrest, the investigation took two courses: first, the matter

of identification by Johnson and, second, questioning of plaintiffs as to their activities. The identification procedure was this: Johnson remained in one police car while the plaintiffs were placed in the headlights of that car so that Johnson could get a look at them. Johnson, pointing at Cole, said, "That looks like the man," and then, when Cole was brought to the side of the automobile, "That's the man." The testimony of the officers and of the plaintiff Cole is in agreement that Johnson repeatedly said, "That's the man," indicating Cole. At the trial, Johnson testified that he could not be sure, as of the time of the trial, whether he had said, "That's the man," or "I think that is the man." There was some colloquy among the officers to the effect that McCallister fitted the description that had earlier been given by Johnson better than did Cole.

Plaintiffs were asked by the police where they had been and they stated that they got off work at Standard Oil around 11:30, went to Oakland and then came back to Richmond and changed cars, and had been driving up and down Macdonald Avenue. Thus it was known to the police that McCallister had been with Cole during the time when the robbery took place and Cole was identified as the robber. Sergeant Pace of the Richmond police force, who was present at the scene, was informed by another officer that the identification of Cole had been made and he ordered the arrest of the two plaintiffs. Plaintiffs were taken to the police station, fingerprinted and photographed, and after detention of about 10 hours and after a lie-detector test had been taken by each of them, were released. Neither plaintiff had ever been arrested before except possibly for traffic violations, both were employed, and according to their testimony, which we accept as true because of the directed verdict, they had been cruising with no particular destination in mind. They denied any participation in the robbery consistently, from the time the first questions were put to them. Appellants point to the following faults with the identification procedure: (1) Although the robber had consumed part of a bottle of beer, no one tested the breath of Cole. (2) The robber was described by Johnson as being about 5 feet 6 inches or 5 feet 7 inches in height, but Cole is about 5 feet 11½ inches. (3) The robber was described as being about 140 pounds in weight, but Cole was 152 to 155 pounds. (4) The robber was described as having dark hair, while Cole's hair is not particularly dark; the robber was

described as having curly hair, but Cole's is straight. (5) The robber was described as being 23 or 24 years old, but Cole was 19 years old. (6) The robber had been heard by Johnson, in ordering his drink, but the officers did not have Johnson listen to Cole's voice. (7) The shirt worn by the robber was blue with white pin stripes, but Cole's shirt was blue and gray with a narrow gold stripe.

At the time of the trial Johnson, under cross-examination, was asked if 90 per cent of his identification was the shirt and the other 10 per cent the size of Cole, and he replied in the affirmative. (This testimony was exacted of Johnson by holding him to a passage in his deposition, although at other places in the same deposition he had testified that he had taken the face of Cole into consideration; however, because of the nonsuit, we accept the version which plaintiffs contend for, as given in the next preceding sentence.)

*Judgment of Nonsuit in Favor of Johnson and Schmitt*

▉ A nonsuit was proper under the holding of *Turner* v. *Mellon*, 41 Cal.2d 45 [257 P.2d 15]. As in the *Turner* case, the defendant Johnson took no active part in bringing about the arrest and cannot be held liable for identifying, to the best of his ability, the man he thought was the perpetrator of the crime. There was no evidence whatever that Johnson was actuated by malice. He had never known Cole or Mc-Callister. ▉ We find no merit in appellants' argument that Johnson's identification of Cole was so reckless as to take it beyond the limits of "honest mistake" in that Johnson did not inform the police that 90 per cent of his identification was related to the shirt and 10 per cent to the size of Cole. Even if these two elements were the only ones in Johnson's mind at the time of the identification, as distinguished from his conclusions at the time of cross-examination, we do not believe the case is thereby removed from the rule of *Turner* v. *Mellon.* Honest mistake may be mistake in the manner of identification, and the elements to be taken into consideration, as well as in error in discerning facial or other physical characteristics. There may be honest mistake, too, in failing to volunteer to the police officers the elements which the identifying witness has used in making the identification. There was no evidence of malice on Johnson's part and there was no urging, or even request, by him that the police make the arrest. Judgment of nonsuit will be affirmed, and it will not be necessary to discuss the liability of Johnson's partner,

Schmitt, which could be sustained, if at all, only if Johnson were culpable.

*Directed Verdict in Favor of the Police Officers*

■    Where the evidence material to the issue of probable cause is without substantial conflict, it is a question of law for the court to decide whether there was probable cause for arrest. (*Coverstone* v. *Davies,* 38 Cal.2d 315 [239 P.2d 876]; *Collyer* v. *S. H. Kress & Co.,* 5 Cal.2d 175 [54 P.2d 20]; *Gibson* v. *J. C. Penney Co., Inc.,* 165 Cal.App.2d 640 [331 P.2d 1057].)

[■    In this case there is no substantial conflict. Taking, in favor of plaintiffs, in their action against the officers, the weakest statement of identification which Johnson testified he made, namely, ''I think that's the man'' (although plaintiff Cole testified that Johnson repeatedly said ''That's the man''), we conclude that under all the circumstances there was probable cause for arrest. An armed robbery had been committed; the victim had been brought face to face with a suspect in the light of automobile headlights; the two men detained for questioning had been in the vicinity of the robbery and had changed automobiles; the victim had said, at the very least, that he thought one of these was the man.

■    Reasonable or probable cause for an arrest without a warrant exists when a man of ordinary care and prudence, knowing what the officer knows, would be led to believe or conscientiously entertain a strong suspicion that the arrested person is guilty of a crime, even if there is room for doubt. (*Collyer* v. *S. H. Kress & Co., supra,* 5 Cal.2d 175; *Coverstone* v. *Davies, supra,* 38 Cal.2d 315; *People* v. *Ingle,* 53 Cal. 2d 407 [348 P.2d 577]; *People* v. *Carnes,* 173 Cal.App.2d 559 [343 P.2d 626]; *People* v. *Lopez,* 196 Cal.App.2d 651, 654 [16 Cal.Rptr. 728]; *People* v. *Ruiz,* 196 Cal.App.2d 695, 699 [16 Cal.Rptr. 855]; *People* v. *Williams,* 196 Cal.App.2d 726, 728 [16 Cal.Rptr. 836].)    ■    The opinion in *People* v. *Ingle, supra,* states (at p. 413): ''Probable cause has also been defined as having more evidence for than against; supported by evidence which inclines the mind to believe, but leaves some room for doubt.''    ■    The identification and the circumstances here surely were sufficient to cause the officers to entertain a strong suspicion that the guilty persons were those before them and to make the arrest. The observation of discrepancies and the testing of the identification were matters for later investigation.

As we have said above, the unduly long confinement, of which the plaintiffs complain in their complaint, was something for which the arresting officers were not responsible, as plaintiffs now concede. ██ Whatever damage they may have suffered by reason of the record of their arrest is mitigated, if not completely repaired, by the provisions of subdivision (b) (1) of section 849 of the Penal Code, to the effect that any record of an arrest without a warrant, which is not followed by a criminal complaint, shall include a record of the release, and it shall be deemed not an arrest but a detention only. To the extent that the plaintiffs were damaged, they have suffered *damnum sine injuria* as a consequence of faulty but honest attempted identification and an arrest made in reliance thereon.

Judgment of nonsuit in favor of certain defendants, and judgment on directed verdict in favor of other defendants, affirmed.

Draper, P. J., and Salsman, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied February 7, 1962.