[Civ. No. 40614. First Dist., Div. Three. Feb. 2, 1978.]

DEMETRIOS GIANNIS, Plaintiff and Appellant, v.
CITY AND COUNTY OF SAN FRANCISCO et al.,
Defendants and Respondents.

COUNSEL

Edwin Train Caldwell for Plaintiff and Appellant.

Thomas M. O'Connor and George Agnost, City Attorneys, and Philip S. Ward, Deputy City Attorney, for Defendants and Respondents.

OPINION

TERRY, J.*—Plaintiff appeals from a judgment, entered after summary judgment for defendants was granted, dismissing his action for false arrest and false imprisonment.

FACTS

On February 12, 1974, plaintiff Demetrios Giannis left his place of employment, Dino's Bar, about 2:20 a.m. Dino's is located in the "Tenderloin" district of the City and County of San Francisco. The "Tenderloin" is recognized as a high crime area. Plaintiff walked around the corner to his red Volkswagen Karmann Ghia automobile (license number UYE 875) parked on O'Farrell Street and departed for home.

Moments before, Ms. Beverly Stephens, employed at the nearby "French Quarter Nude Encounter Studio" had been the victim of an armed robbery. As the robber was leaving, Ms. Stephens pushed a button that rang a bell in the bar next door. The bartender, Stephen Dulics, came to the studio in response to the bell and both parties went out to the sidewalk. Ms. Stephens pointed the robber out to Mr. Dulics and they followed him around the corner to O'Farrell Street where they observed him get into a red Karmann Ghia, license number UYE 875. The person they observed was in fact not the robber but was plaintiff returning to his car after closing Dino's Bar. Officers Eterovich and Del Torre a few minutes later responded to the studio to take the report of the armed robbery. They received a description and license number of the vehicle from Mr. Dulics and a physical description of the suspect from Ms. Stephens. The following is a comparison of the description

*Assigned by the Chairperson of the Judicial Council.

given by Ms. Stephens of the suspect and the actual description of plaintiff:

|  | Suspect | Plaintiff |
|---|---|---|
| Height | 5'10" | 5'7" |
| Weight | 200 | 175 |
| Nationality | Latin type | Greek |
| Age | 28 | 36 |
| Hair | Black, wavy, thick | Black, thin, straight |
| Facial Hair | Moustache, black, thick | None |

The suspect was also described as wearing a black and white striped shirt, a blue jacket and dark trousers. Later on February 12, information concerning the robbery together with the description of the suspect and vehicle were put on a police teletype addressed to all stations and units of the San Francisco Police Department.

On March 4, 1974, Officers Dryden and Renehan who had read the teletype, were assigned to stake out the vehicle which was reported to have been involved in the armed robbery. It was again located in the "Tenderloin" area near Dino's Bar and the encounter studio. At 2:10 a.m., the officers saw plaintiff enter the vehicle they were staking out and followed him as he drove away, pulling the car over using red lights a few blocks later. When plaintiff emerged from the vehicle, Officer Dryden concluded that he fit the description on the teletype. He appeared to the officer to be in his early 30's, although he later stated that in certain light he could appear to be around 28 years old. He also appeared to be 5 feet 9 inches, 190 pounds, had black hair, was wearing a two-toned pink and white shirt, brown jacket and dark navy blue trousers. Plaintiff also appeared to be what some people might describe as a Latin type and was found carrying $223 cash, a large amount for that section of town at that time of night. Officer Dryden stated that while plaintiff had no moustache, he could have shaved it off since the robbery. He attributed any differences between plaintiff's appearance and the teletype description to the fact that he believed the description had come from the victim of the crime, who might have been excited at the time of the robbery. Plaintiff was arrested for the February 12 armed robbery of the encounter studio.

Unbeknownst to Officers Dryden and Renehan, Inspector Goyton of the San Francisco Police Department had done some investigation of the robbery prior to plaintiff's arrest. During this investigation, Mr. Dulics was shown a photo lineup, and had picked out plaintiff's picture as the

man Ms. Stevens had pointed out to him as being the robber. Ms. Stevens failed to recognize plaintiff's or any other picture when shown the photo lineup; and, had she been asked, she would have stated that plaintiff definitely was not the robber.

On March 26, 1974, charges against plaintiff were dismissed pursuant to Penal Code section 1358 upon motion of the district attorney.

On June 19, 1974, plaintiff filed the instant action seeking damages for false arrest and false imprisonment. Thereafter defendants moved for summary judgment and after a hearing an order was filed granting summary judgment for defendants, granting judgment for defendants and dismissing the complaint. This is an appeal from the judgment thereafter entered on October 21, 1976.

> *Did the papers submitted to the trial court in connection with the motion for summary judgment disclose no triable issue as to any material fact?*

Section 437c of the Code of Civil Procedure provides that a motion for summary judgment will be granted if "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to judgment as a matter of law." This section further provides that "[s]upporting and opposing affidavits or declarations shall be made by any person on personal knowledge, shall set forth admissible evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

It is firmly established that the party moving for summary judgment has the burden of showing that no triable issue of fact exists as to every element necessary to obtain the judgment (*Vesely* v. *Sager* (1971) 5 Cal.3d 153, 169 [95 Cal.Rptr. 623, 486 P.2d 151]); that the pleadings define the scope of the issues on a motion for summary judgment (*Warfield* v. *McGraw-Hill, Inc.* (1973) 32 Cal.App.3d 1041, 1043, fn. 2 [108 Cal.Rptr. 652]); and, that the documents filed by the moving party are to be strictly construed, while those of the opposing party are to be liberally construed. (*Slobojan* v. *Western Travelers Life Ins. Co.* (1969) 70 Cal.2d 432, 437 [74 Cal.Rptr. 895, 450 P.2d 271]; *Eagle Oil and Ref. Co.* v. *Prentice* (1942) 19 Cal.2d 553, 556 [122 P.2d 264].)

It is undisputed that Officer Dryden arrested plaintiff solely on the basis of the police teletype and his assignment to stake out plaintiff's

car. Plaintiff contends that the information gathered by the independent investigation of Officer Goyton should be considered in determining the validity of the arrest.

Since plaintiff pled a cause of action for false imprisonment, and not for negligent investigation, we conclude that the conduct of the investigators and the knowledge which may have been possessed by anyone besides the arresting officers is irrelevant. We reach this conclusion reasoning as follows: first, Penal Code section 847 provides that "no cause of action shall arise against any peace officer, acting within the scope of his authority, for false arrest or false imprisonment arising out of any arrest when: . . . (a) Such arrest was lawful . . . ." Secondly, Penal Code section 836 provides that "A peace officer may . . . without a warrant, arrest a person: . . . . 3. Whenever he has reasonable cause to believe that the person . . . has committed a felony, whether or not a felony has in fact been committed"; thirdly, the courts have held that in determining whether reasonable cause existed for a warrantless arrest, the court must look to the facts known to the peace officer at the time of the arrest. (*People* v. *Ross* (1967) 67 Cal.2d 64, 69-70 [60 Cal.Rptr. 254, 429 P.2d 606], revd. on other grounds 391 U.S. 470 [20 L.Ed.2d 750, 88 S.Ct. 1850];* *People* v. *Honore* (1969) 2 Cal.App.3d 295, 300-301 [82 Cal.Rptr. 639]; *Ojeda* v. *Superior Court* (1970) 12 Cal.App.3d 909, 918 [91 Cal.Rptr. 145].) In *People* v. *Ross,* the court held that an officer is entitled to rely on information from official sources in making an arrest. In *People* v. *Honore,* the court held that the officer was entitled to arrest the suspect based on a check of the official records. The fact that the records had not been updated to reflect more recent information did not affect the lawfulness of the arrest. The description the victim gave to the police, the actual description of plaintiff, and the facts surrounding the arrest are not contested by the parties.

The only factors therefore which determine whether the arrest was with probable cause are the contents of the teletype and the observations of the officers at the time of the arrest. Since plaintiff has presented no admissible evidence showing that the arresting officer had any other information, the only issue for decision was whether under these undisputed facts, the arrest was made with reasonable cause.

---

*Although *People* v. *Ross* was reversed by the United States Supreme Court due to improper prosecutorial comment on the defendant's exercise of his right to remain silent, the portion of the opinion holding that police may rely on official information was cited with approval in *People* v. *DeVaughn* (1977) 18 Cal.3d 889, 895 [135 Cal.Rptr. 786, 558 P.2d 872].

The issue of whether an arrest was made with reasonable cause is an issue of law to be decided by the court. (*Collyer* v. *S. H. Kress & Co.* (1936) 5 Cal.2d 175, 181 [54 P.2d 20]; *White* v. *Martin* (1963) 215 Cal.App.2d 641, 643 [30 Cal.Rptr. 367]; *Whaley* v. *Jansen* (1962) 208 Cal.App.2d 222, 227 [25 Cal.Rptr. 184]; *Gibson* v. *J. C. Penney Co., Inc.* (1958) 165 Cal.App.2d 640, 644-645 [331 P.2d 1057]; *Roberson* v. *J. C. Penney Co.* (1955) 136 Cal.App.2d 1, 4 [288 P.2d 275]; and *Aitken* v. *White* (1940) 93 Cal.App.2d 134,141 [208 P.2d 788]; 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 220, p. 2505.)

Plaintiff cites *Robinson* v. *City and County of San Francisco* (1974) 41 Cal.App.3d 334 [116 Cal.Rptr. 125], for the proposition that since reasonableness is the issue, it should be a jury question. However, *Robinson* involved the question whether a police officer acted reasonably under the terms of Civil Code section 43.5(a) when he arrested Smokey Robinson pursuant to a description in an arrest warrant. The court carefully distinguished the line of cases cited above, stating that *Robinson* did not involve the issue of reasonable, or probable cause. (*Robinson, supra,* 41 Cal.App.3d at 337.) Therefore, *Robinson* is not persuasive here. Equally unpersuasive are the other cases cited by plaintiff to support his claim that reasonable cause is a jury question. *R. D. Reeder Lathing Co.* v. *Allen* (1967) 66 Cal.2d 373, 380 [57 Cal.Rptr. 841, 425 P.2d 785] merely states that questions of fact are to be tried by the jury. *Curreri* v. *City etc. of San Francisco* (1968) 262 Cal.App.2d 603, 609-610 [69 Cal.Rptr. 20], held that if reasonable men might differ as to what constituted a dangerous condition, the jury should decide whether it was negligence for San Francisco to erect curbs less than six inches in height. Thus, there is no merit to plaintiff's contention that the issue of probable cause should have been decided by a jury.

We hold, therefore, that the trial judge correctly ruled that the officers herein had probable cause to arrest plaintiff and that plaintiff failed to overcome the critical averments in the defendants' moving papers.

The judgment is affirmed.

Scott, Acting P. J., and Feinberg, J., concurred.

A petition for a rehearing was denied March 3, 1978, and appellant's petition for a hearing by the Supreme Court was denied March 30, 1978.