[S. F. No. 13423. In Bank.—January 27, 1931.]

ERNEST BURTON RICHARDES, Appellant, v. ANN AGNES RICHARDES, Respondent.

Harold H. Price for Appellant.

Wal. J. Tuska for Respondent.

SEAWELL, J.—This appeal is from a judgment of non-suit.

The action was brought by plaintiff to obtain a decree of divorce from defendant on the ground of wilful desertion. Said desertion is predicated on the offers of plaintiff, alleged to have been made in good faith following a long voluntary separation, to resume matrimonial relations as prescribed by the Civil Code, section 101, but which offers of reconciliation and restoration defendant refused to accept, as hereafter will appear.

Appellant and respondent intermarried at the city of Montreal, Dominion of Canada, May 22, 1894. Shortly thereafter they removed to Brighton, England. Three

daughters were born in wedlock. Suspicions which lurked in the mind of appellant as to the paternity of the last child born at Brighton in 1901, two months after appellant had left the family domicile, gave rise to discord which resulted in appellant's departure for New Zealand, leaving family and all behind. The appellant and respondent met many years thereafter in California, where he unsuccessfully prosecuted in 1922 and 1924, respectively, two divorce actions against his wife, one on the ground of cruelty, and the other on the ground of desertion. Neither the judgment-rolls, nor any of the pleadings or proceedings had in said other cases were offered or received in evidence in this action. No witnesses were heard in the instant case except the appellant and witnesses called on his behalf. Consequently the testimony of himself and his witnesses stands uncontradicted.

■ A motion for a nonsuit is in effect a demurrer to the evidence and the court must assume that all the evidence received in favor of the plaintiff relevant to the issues is true. All presumptions, inferences and doubtful questions must be construed most favorably to the plaintiff's case. The rule is so well settled that it is not necessary to enlarge upon it.

■ From the evidence before us appellant was residing with his family at Brighton, England, in 1901. The wife became pregnant. From his neighbors or from some other source he became suspicious that she was intimate with a man named Gay. The matter seems to have come to a head in the shape of a personal encounter in which the three were embroiled. Gay and the wife, in turn, had the appellant arrested on separate charges of assault. The wife was a witness against appellant, but he was acquitted on both charges. She also told the head of the railroad company which employed appellant that her husband had in his possession stolen property belonging to the company. She caused his discharge. During this period of storm and stress appellant informed his wife that he was going to New Zealand where his brother was located. The wife replied that she "didn't care a damn where I went, so long as I was out of her sight". In 1901, upon his arrival at New Zealand, he wrote to his wife, telling her of his arrival, and also

of his departure in 1904 from New Zealand for San Francisco. That appellant made an earnest effort to locate his wife after he left England is clearly shown by letters which he wrote to her attorney, her clergyman, persons likely to know of her presence, the head of the police department, and by publication, there is no dispute. That the wife did not wish her whereabouts known to him is an inference equally certain. After the passing of a number of years he got into touch with one of his daughters who said she did not know her mother's address. He afterward brought one of his daughters to America, and the wife seems to have arrived at Boston in 1921. Said two divorce actions referred to were brought in the county of Marin and the city and county of San Francisco. It seems that the wife asked for no counter-relief except alimony which was allowed her in the last action at the rate of $60 per month. This allowance the appellant has continuously paid. The wife claims that the separation as herein related was desertion on the part of the husband, while the husband claims that his leaving and remaining away was not only with her consent but it was her desire, as shown by her refusal to accept a reconciliation on any reasonable terms or conditions recognized by the law. Prior to the commencement of this action appellant offered to furnish the spouse with a comfortable home and receive her as a husband should receive and treat his wife. Others at his solicitations attempted to induce the wife to return to the matrimonial status, but she has always steadfastly refused. As a final test of her intention the following question was put to her by the attorney for appellant when in the presence of appellant in an interview with her he offered her a fit and suitable home in which to reside: "It is not your wish either to become reconciled to or live with your husband—is that the case?" Her answer was that such was the case. She also replied to the suggestion that appellant owned an automobile which they could enjoy, that it would be his purpose to get her into the automobile and tip her out and kill her. The parties to the action have lived separate and apart for a period of approximately thirty years. More than twenty years passed before appellant filed his first action for divorce. Both are well advanced in years. The only inference that can be drawn from the

separation and its long duration is that both received the hearty approval of the wife, and that there is no reasonable inducement appellant can offer that would influence her to resume matrimonial relations with him. This is affirmatively established by her last words before his departure from England and at the last attempt at a reconciliation. If respondent was in fact entitled to a divorce on the grounds of desertion she never at any time asserted her right. A similar situation was treated in *McMullin* v. *McMullin*, 140 Cal. 112 [73 Pac. 808, 809]. It was there said: "Defendant never sought to obtain the divorce to which she was entitled, if the separation was without her consent. It is clear from the record that the declared position of defendant for certainly three years preceding the commencement of this action has been that she insisted upon living separate and apart from her husband and would consent to nothing else. . . . The character of the separation of a man and wife is not forever established by the status at the time they cease to live together. What was originally a separation without consent may become a separation by consent, and whether or not it has become such is a question of fact depending for its solution upon all the circumstances of the particular case. Desertion is a continuing offense, but it continues only so long as there is a want of consent to the separation on the part of the deserted party. Of course, the original offense is not destroyed by the fact after the desertion has continued for the period essential to make it a ground of divorce, the status of the separation changes and the separation becomes in every way agreeable to the deserted party. She has still her right of action for a divorce because thereof . . . But she is compelled to assert that right within a reasonable time (Civ. Code, sec. 124, subd. 3), and the continuance of the separation after such change in the status *is not a continuance of the desertion.* The parties are by the change placed in a position of living separate and apart by consent and under the provisions of our statute (Civ. Code, sec. 101) either party may revoke his consent and in good faith seek a reconciliation and restoration, and the refusal of the other to conform thereto constitutes desertion on his or her part, which, if continued for one year, becomes a ground of divorce. . . . Our statute, after providing that a divorce must be denied when the

action is not brought within a specified time in cases of adultery and conviction of felony, provides that it must be denied in all other cases, where there is an unreasonable lapse of time before the commencement of the action (Civ. Code, sec. 124), and further provides that 'Unreasonable lapse of time is such a delay in commencing the action as establishes the presumption that there has been connivance, collusion or condonation of the offense, *or full acquiescence in the same, with intent to continue the marriage relation,* notwithstanding the commission of such offense.' (Civ. Code, sec. 125.) There cannot be the slightest doubt under the circumstances appearing here that if it be admitted that defendant originally had a good cause of action for desertion it is barred by the provisions of these sections. The law of this state does not contemplate the enforcement of any such condition of the parties to the marriage as that contended for by defendant, a continuance of the marriage relation with the parties living separate and apart against the will of one of them. It does not place it within the power of one of the parties to insist that he or she shall be free from the obligations of marriage, and that at the same time the other party shall be compelled to remain his or her husband or wife, simply because the other party has been guilty of some offense constituting a ground of divorce, at a time so far distant that a divorce cannot now be granted therefor." Whether or not appellant's offers to resume matrimonial relations were made in good faith is a question of fact which cannot be disposed of by an order of nonsuit. Besides, the testimony offered by appellant and his witnesses is not contradicted. In fact it is corroborated by the wife's express declaration and by her long acquiescence. It does not appear that she asked for a divorce from appellant in either of the two former actions brought by him against her on any grounds, but merely contented herself with contesting his right and obtaining an alimony allowance. The records in those cases, however, are not before us. The facts adduced at the trial required a decision upon the merits of the action and the motion for a nonsuit was improperly granted.

Judgment reversed.

Shenk, J., Preston, J., Richards, J., Curtis, J., Langdon, J., and Waste, C. J., concurred.