[Civ. No. 11364. Second Appellate District, Division Two.—June 14, 1937.]

ROSE A. MOFFATT, Appellant, v. BUFFUMS' INC. (a Corporation) et al., Respondents.

Chris Wilson for Appellant.

Swaffield & Swaffield, Kenneth Sperry, Joseph E. Madden and Joseph A. Ball for Respondents.

CRAIL, P. J.—This appeal is taken by the plaintiff from a judgment of dismissal entered against her after defendants' motion for a nonsuit was granted. The action was one for false imprisonment. The trial court's ruling must therefore be examined in the light of the numerous and uniform decisions of this state which hold in effect that the motion for nonsuit "admits the truth of plaintiff's evidence, and every inference of fact that can be legitimately drawn from it, and the evidence should be interpreted most strongly against the defendant". (*Miller* v. *Cookson,* 89 Cal. App. 602 [265 Pac. 374].) "Every favorable inference fairly deducible and every favorable presumption fairly arising from the evidence adduced must be considered as facts proved in favor of the plaintiffs. Where evidence is fairly susceptible of two constructions, or if one of several inferences may reasonably be made, the court must take the view most favorable to the plaintiffs." (*Berger* v. *Lane,* 190 Cal. 443 [213 Pac. 45]; *Coakley* v. *Ajuria,* 209 Cal. 745 [290 Pac. 33]; *Richardes* v. *Richardes,* 211 Cal. 392 [295 Pac. 816].)

In the light of the above rules which apply when a nonsuit is granted, the following are the facts of the case: On July 30, 1935, plaintiff, an employee of defendant, Buffums' Inc., at the request of defendant Galbreth, who was secretary and treasurer of the defendant corporation, went to the office of the general manager in the building belonging to defendant corporation. Upon entering the office, the door was closed behind her by Galbreth, who then introduced plaintiff to defendant Watson, also an employee of defendant corporation. After plaintiff was seated at Watson's request, the latter accused her of stealing a sum of money belonging to defendant corporation, which plaintiff denied. Such accusations and denials were repeatedly made for the greater part of five hours, the approximate time during which plaintiff was detained in the office. Watson informed plaintiff that she was not there to explain anything, but was there on a charge of stealing the money; also, she was informed that Watson was a "Government man". Watson, after repeated attempts, finally secured a written confession of such theft from plaintiff, but only after forcibly restraining plaintiff, against her will, from leaving the office. The defendant Galbreth was out of the office during most of the five-hour period, but was

present briefly on several occasions, at which times he conversed with Watson, out of plaintiff's hearing.

The principal contention raised by the briefs is whether there was sufficient evidence to create a *prima facie* case of false imprisonment. In this behalf we quote the following portions of plaintiff's testimony: "Q. What did he do? A. He (Watson) took me by the arm and seated me and I went to get up and he said, 'You are going to write this (a confession)', and he sat me down. Q. Did he take hold of you? A. Yes. Q. Where? A. By the arm. . . . Q. What do you mean by 'seated'? A. Took me by the arm and sat me down in the chair. Q. How did he sit you down in the chair? A. Took me by the arm and pushed me down. Q. Pushed you down? A. Yes. I got up and I said, 'I can't write it. It is a lie.' He said, 'You will write it. You will sit there until you do write it.' I got up and he seated me. He said, 'You will write it.' . . . Q. Did you write? A. I started to write, but I dropped the pen. I could not write, I was shaking so. Q. After you had dropped the pen he got another piece of paper? A. Yes. He picked up the pen and he said, 'You will write it.' I could not write it, and I said, 'I can't write it.' I said, 'I did not take anything. It is a lie. I want to go.' He said, 'You are going to write it. You will stay there until you do write it.' "

Any unlawful exercise of force, or express or implied threat of force, by which in fact any person is deprived of his liberty and compelled to remain where he does not wish to remain is a false imprisonment. (*Vandiveer* v. *Charters*, 110 Cal. App. 347 [294 Pac. 440].) In the present case, plaintiff had expressed her desire to depart, had been told that she could not leave until she had signed a confession and, upon attempting to leave, had been forcibly detained. Clearly there was *prima facie* evidence of false imprisonment.

Relying upon the fact that plaintiff received her usual pay for the period of time she was held in the office, respondents contend that plaintiff, as an employee of the defendant corporation, was merely being asked to perform such services for her employer as she was, by law, obligated to perform (Civ. Code, secs. 1981 and 1986), and that, therefore, there was no false imprisonment. Those sections of our Civil Code do not authorize an employer to forcibly detain the person of an employee for the purpose of compelling a

confession of a theft of the employer's property at some prior time.

In this respect, respondents contend that there was probable cause for so detaining plaintiff since the defendants, in good faith, believed that she had stolen money from her employer. In *Collyer* v. *S. H. Kress & Co.*, 5 Cal. (2d) 175 [54 Pac. (2d) 20], an action for false imprisonment, the court stated the rule as follows: "Where a person has reasonable grounds to believe that another is stealing his property, *as distinguished from those where the offense has been completed,* he is justified in detaining the suspect for a reasonable length of time for the purpose of investigation in a reasonable manner." In that case, the plaintiff was apprehended in the act of stealing certain property and the court held that probable cause was a good defense. In the instant case, however, the evidence, unexplained, indicates that plaintiff was not detained for the purpose of investigation, but, on the contrary, was detained for the purpose of securing a confession to the theft of money at a prior time. The alleged offense had been completed and the manner of detention was unreasonable. There is nothing in this contention which would justify the granting of the motion for a nonsuit.

The final point raised by respondents is that there is no evidence to establish responsibility on the part of the defendant corporation or of the defendant Galbreth. Galbreth was a general officer of the defendant corporation. The evidence was that the false imprisonment took place for five hours right in the general offices of the corporation. It was Galbreth who sent for the plaintiff. During the five-hour period Galbreth held subdued conversations with the agent of the company who was actually perpetrating the false imprisonment. The facts and circumstances in evidence if unexplained were such that the inference might reasonably be drawn that the false imprisonment was under the active supervision and direction of Galbreth and the corporation.

Judgment reversed.

McComb, J., concurred.

A petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 12, 1937.