[Civ. No. 18318.   Second Dist., Div. Three.   Nov. 9, 1951.]

A. B. COYNE, Respondent, v. DAN NELSON et al.,
Defendants; J. E. EBBERT, Appellant.

Ray L. Chesebro, City Attorney, Bourke Jones, Assistant City Attorney, Roland Wilson, John F. Feldmeier and Robert Burns, Deputy City Attorneys, for Appellant.

Jerrell Babb for Respondent.

VICKERS, J. pro tem.—Action for damages for false imprisonment. Judgment for plaintiff.

Plaintiff-respondent filed suit against the appellant Ebbert, a police officer, and several other defendants for damages for false imprisonment. After trial before the court without a jury, the plaintiff having dismissed as to the defendants Dan Nelson and L. M. Nevarez, the court gave judgment against the appellant and the defendants Michael Krempels and James Snyder for $750, as compensatory damages, and against the appellant and the defendant Michael Krempels for $500, as punitive damages. Thereafter the appellant and these defendants moved for a new trial. The court denied such motions. From the judgment and the order denying a new trial Ebbert alone appeals. The appellant attacks the judgment on the ground that the evidence does not support some of the findings and that the findings as to compensatory damages are irreconcilable.

The court found in part as follows: That the respondent, a real estate broker, was falsely accused by appellant (and other defendants) of stealing property and was falsely arrested and imprisoned by appellant against respondent's will; that in so doing appellant did not believe respondent had committed any crime or have reasonable grounds or probable cause for so believing; that appellant acted maliciously and to plaintiff's damage.

A reading of the reporter's transcript discloses the following evidentiary facts which the court was entitled to believe: That for several years prior to May 14, 1948, respondent had

been a successful real estate broker; that just prior to and on May 14, 1948, the defendants Krempels and Dan Nelson and the respondent were engaged in a complicated real estate transaction involving a motel in Atwater, California; that respondent was to receive a $3,000 commission from Krempels; that during the course thereof Krempels, through the respondent, exchanged certain diamonds for a house trailer (referred to generally by the witnesses as "the bus"), owned by one Lyton; that Lyton, at Krempels' suggestion, delivered "the bus" to the respondent together with the pink slip therefor assigned in blank; that respondent thereupon executed and delivered his promissory note, dated May 3, 1948, in the sum of $4,500, to and in favor of Krempels and assigned to Krempels his $3,000 commission; that there was an understanding between Krempels and respondent that respondent would sell "the bus" and deliver the proceeds of the sale to Krempels; that shortly thereafter respondent brought "the bus" to Los Angeles and to San Fernando to find a buyer. It further appears that during the course of the transaction the respondent on April 11, 1948, executed and delivered his check in the sum of $10,000 to and in favor of Nelson and that at the time of the delivery thereof the respondent did not have sufficient funds in the bank, upon which the check was drawn, to meet the check but that he so informed Nelson and Krempels at the time of issuance and further informed them that he would obtain the necessary funds from another real estate transaction and would deposit them to cover the check; that shortly before May 14, 1948, the date of the claimed false imprisonment, the defendant Snyder was brought into the transaction with the intent of all parties that he would be substituted for and take the place of the respondent. It further appears that during the daytime of May 14, 1948, Krempels caused a police officer of the city of San Fernando to investigate the respondent, who was then living with his wife and children in "the bus" in that city, upon a charge that the respondent had stolen "the bus," but that after a discussion with the respondent, during which he exhibited to that police officer the pink slip and his policy of insurance covering "the bus," the officer informed Krempels that there was no ground for an arrest of the respondent; that on the evening of the same day Krempels, Nelson and Snyder went to the office of Attorney Joseph Forno in Los Angeles and discussed some phases of the matter with him and at that

time Krempels, Nelson or Attorney Forno, or all of them, telephoned the appellant, a police officer of the city of Los Angeles, who was off duty, at his residence in Hollywood; that that night the defendants Nelson, Snyder and Krempels drove to appellant's residence in Hollywood; that after some discussion Nelson loaned Krempels $100 in currency and Krempels handed some currency to the appellant; that thereupon Nelson, Snyder, Krempels and appellant and a friend of appellant, named Boyd, drove to the place where the respondent was living in "the bus" arriving about 9 p.m.; that appellant knocked on the door of "the bus" and when the respondent and his wife came to the door announced that he was a police officer and intended to take the respondent "in"; that upon being asked for his authority he produced a pair of handcuffs and stated that they were all the authority he needed; that respondent, who had retired, was instructed by the appellant to dress and thereupon, over his protest, appellant forcibly took him to the automobile and forced him to enter the same; that appellant told respondent and his wife that he was going to take him to jail or to room 21 in the city hall of Los Angeles (police headquarters) and permitted respondent's wife to telephone his attorney, Thomas Connell; that respondent demanded to be taken to a judge or that he be released and permitted to leave the automobile, and attempted to get out, whereupon appellant handcuffed his arms behind him; that respondent and appellant, Krempels, Nelson and Boyd were then driven by Snyder to the rooms of Krempels and Nelson in the Rosslyn Hotel. It further appears that during the trip respondent was seated in the rear of the car between appellant and Boyd, who he thought was a police officer, and at Nelson's suggestion the handcuffs were removed; that Krempels accused respondent of stealing "the bus" and stated he wanted the $4,500 or the pink slip and "the bus"; that respondent refused to comply and demanded that he be taken to jail or before a judge; that appellant asked respondent if he had the pink slip; that nothing was said about the $10,000 check; that upon arrival at the rooms of Krempels and Nelson the respondent demanded that he be allowed to call his lawyer but the appellant refused to let him do so and ordered him to sit in a certain chair and to remain there; that between 30 minutes and an hour thereafter appellant permitted respondent to call his lawyer Connell, which he did; that Mr. Connell arrived about 30 minutes thereafter; that respondent was detained in the rooms until about 4 a.m.

the next morning when appellant told him he could go home; that during the time that respondent was detained in the rooms Krempels kept insisting that the respondent pay him the $4,500 or surrender the pink slip and ''the bus,'' which the respondent refused to do and stated that Krempels would have to pay him the $3,000 commission due him from the real estate transaction; that no mention was made of the $10,000 check; that respondent was not taken to jail or before a magistrate and was returned to ''the bus'' in San Fernando by defendant Snyder about daylight. It further appears that appellant made no written report of the affair until May 20, 1948, when he signed two memorandum reports, in one of which he made no reference to the $10,000 check matter and in both of which he originally said Krempels was on the trip to San Fernando (this later changed to Snyder); that on May 19th defendant Nelson swore to a criminal complaint charging the respondent with having issued the $10,000 check without sufficient funds and a warrant was issued; that on May 24th the respondent surrendered under the warrant and thereafter was discharged at the preliminary hearing. It further appears that as a result of the acts complained of respondent and his wife were greatly humiliated, embarrassed and fearful of what was going to be done with him; that it became common gossip in the neighborhood where respondent lived that he had been arrested for stealing ''the bus''; that respondent was required to move from his place of business and lost one or more business associates who discontinued their practice of referring real estate business to him; that he gave up the real estate business.

It is apparent from the above recital that there was substantial evidence together with the inferences that could be reasonably and legitimately drawn therefrom, to support each and all of the findings attacked by appellant. This being so an appellate court can not draw contrary conclusions. (*Hughes* v. *Oreb*, 36 Cal.2d 854, 856 [228 P.2d 550].) It is true that evidence was received which directly contradicted much of that recited above but it is apparent that the court did not believe it. This was particularly true as to the testimony given by appellant to support his contentions that he had reasonable cause to believe that respondent had committed a crime, arrested him for issuing the $10,000 check without sufficient funds to cover it, and acted in good faith and without malice. In addition to the testimony given by other witnesses contradicting appellant he gave much testimony that was

equivocal and sometimes contradicted his earlier testimony. His attempts to explain his delay in making a report of the arrest, the fact that one report spoke only of ''the bus'' transaction and that both of them originally listed Krempels as having been present on the trip to San Fernando are examples of this. The court (the trier of fact) had the right to completely reject appellant's testimony if it felt impelled so to do. (Code Civ. Proc., § 1847; *Blank* v. *Coffin*, 20 Cal.2d 457, 461 [126 P.2d 868].) The court may well have believed that the appellant was solely actuated by a desire to assist Krempels in forcing respondent to pay the $4,500 or deliver ''the bus'' and the pink slip to Krempels and that the consideration for such assistance was a considerable sum of money given to appellant by Krempels.

Appellant urges that there is an irreconcilable conflict between findings II and VI which requires a reversal of the judgment, because finding II declares that at the time of the commencement of the action (November 12, 1948), respondent's reputation and business was good, while finding VI declares the false imprisonment greatly hampered respondent in his business. These findings read as follow:

## ''II

''It is true that at the time of the commencement of this action and prior thereto, and particularly on or about the 14th day of May, 1948, the plaintiff A. B. Coyne was a duly and regularly licensed real estate broker, doing business in the State of California, having his principal place of business in the City of Los Angeles, County of Los Angeles, State of California, and as a real estate broker was entrusted with sums of money and other property belonging to his clients, and did maintain a reputation for fidelity and integrity, and that in the ordinary course of said business and profession, plaintiff's clients did repose confidence in plaintiff's good faith and honesty. . . .

## ''VI

''It is true that defendants falsely imprisoned plaintiff and that said false imprisonment injured plaintiff in his business as a real estate broker and caused plaintiff to be greatly hampered in following his chosen business and profession.''

While there may be some uncertainty in these findings they and the findings as a whole are not irreconcilable. As said in *Richter* v. *Walker*, 36 Cal.2d 634, 639 [226 P.2d 593]: '' '. . . Any uncertainty in the findings will be construed so as

to support the judgment rather than to defeat it. . . .' Even where findings are to some extent inconsistent a judgment may not be set aside unless the conflict is clear and material and the findings are incapable of being harmoniously construed.''

The arrest of respondent, his detention from 9 p. m. until 4 o'clock the next morning, the repeated accusations of theft and the consequent embarrassment, humiliation and fear to him and his wife on the night in question and thereafter in themselves are sufficient to support the award of $750 compensatory damages. At least a reviewing court should not interfere unless ''. . . the allowance is so grossly disproportionate to a sum reasonably warranted by the facts as to shock the sense of justice and raise a presumption that it was the result of passion and prejudice.'' (*Kircher* v. *Atchison, T. & S. F. Ry. Co.*, 32 Cal.2d 176, 187 [195 P.2d 427].) The same rule applies to the award of $500 punitive damages.

While appellant's opening brief states that the findings do not support the judgment he does not argue the point. It is sufficient to say that it is clear from the findings (supported by the evidence) that appellant, by the exercise of force, or by express or implied threat of force, deprived respondent of his liberty and compelled him to remain where he did not wish to remain, refused to take him before a magistrate and therefore committed false imprisonment (*Moffatt* v. *Buffums' Inc.*, 21 Cal.App.2d 371, 374 [69 P.2d 424]; *Kaufman* v. *Brown*, 93 Cal.App.2d 508 [209 P.2d 156]); that having arrested the respondent without a warrant the burden was cast upon appellant to prove a proper justification (*Hughes* v. *Oreb*, 36 Cal.2d 854, 858 [228 P.2d 550]), and that he failed to carry that burden; that appellant did not believe respondent had committed a crime or have probable cause so to believe and without good faith imprisoned respondent for the purpose of aiding in the extortion of money from him and therefore was guilty of oppression, fraud and malice and became liable in exemplary damages. (Civ. Code, § 3294.)

The judgment is affirmed. The order denying the motion for new trial not being an appealable order the purported appeal therefrom is dismissed.

Shinn, P. J., and Wood (Parker), J., concurred.

A petition for a rehearing was denied December 5, 1951, and appellant's petition for a hearing by the Supreme Court was denied January 8, 1952.