Filed 10/19/21  Smile Finders v. Chrystal Medina CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| SMILE FINDERS et al., | B298590 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC492238) |
| v. | |
| CHRYSTAL MEDINA et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, William A. MacLaughlin, Judge.  Affirmed in part, reversed in part and remanded with directions.

Lewis Brisbois Bisgaard & Smith, Jeffry A. Miller, Wendy S. Dowse, Craig Holden and Robert M. Collins for Plaintiffs and Appellants Smile Finders, Soleimani Dental Corporation, Soheil Soleimani DMD Corporation, S. Alexander Soleimani Dental Corporation, S.A. Soleimani Dental Corporation and Dental Management Services, LP.

Atabek & Associates and Jon A. Atabek for Defendants and Respondents Chrystal Medina and Genwell, Inc.

Baranov & Wittenberg and Michael M. Baranov for Defendants and Respondents Houman Baratian, Baratian Dental Corporation, and Shallen Price.

_____

Six affiliated dental companies— Smile Finders, a licensed dental referral company; Soheil Soleimani DMD Corporation, Soheil Soleimani Dental Corporation, S. Alexander Soleimani Dental Corporation and S.A. Soleimani Dental Corporation (collectively Soleimani Dental Corporations); and Dental Management Services, LP (DMS)—appeal the judgment entered in their trade secret and breach of contract lawsuit against Dr. Houman Baratian, a dentist who had worked at one of the dental offices owned by the Soleimani Dental Corporations and then opened a competing professional office, and several related individuals and entities.  Smile Finders contends the trial court erred in granting a motion for nonsuit precluding its claim for lost profits for misappropriation of its trade secrets, and all six affiliated dental companies—Smile Finders, DMS and the Soleimani Dental Corporations (collectively the Soleimani parties)—contend the court erred in granting the nonsuit motion as to their breach of contract claims against Baratian and two former employees of Smile Finders and DMS.  We affirm in part and reverse in part with instructions to conduct a new trial as to certain of the Soleimani parties' breach of contract claims.

2

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Parties to the Lawsuit and Appeal*

The Soleimani Dental Corporations, owned by Dr. Soheil Alexander Soleimani, operate a total of eight dental offices. Smile Finders functions as the marketing arm of the affiliated companies generating and providing referrals exclusively to the Soleimani Corporations. DMS provides management services to the Soleimani Dental Corporations.

On September 14, 2012 the Soleimani parties filed an unverified complaint, on February 5, 2013 a first amended complaint, and on September 6, 2013 the operative second amended complaint for injunctive relief and damages alleging causes of action for misappropriation of trade secrets, breach of contract and several related torts. The second amended complaint named as defendants in the misappropriation cause of action Baratian, Baratian Dental Corporation, Chrystal Medina, the former marketing director of Smile Finders who left Smile Finders to work for Baratian, and Genwell, Inc., a company founded by Medina. Baratian, Medina and Shallen Price, a former employee of Smile Finders and DMS, were named as defendants in the breach of contract cause of action. (Baratian, Baratian Dental Corporation, Medina, Genwell and Price, the only defendants involved with this appeal, are referred to collectively as the Baratian parties.)[1] Each of the causes of action was brought on behalf of all six of the Soleimani parties.

---

[1] The Soleimani parties do not challenge the trial court's order granting nonsuit as to the additional defendants named in the second amended complaint or the causes of action alleged other than misappropriation and breach of contract. For her part, Medina has not appealed the trial court's entry of judgment

Baratian, who started working as an independent contractor with Soleimani in 2007,[2] signed a new contract for services with DMS in April 2011.  Article 6 of the contract, titled Proprietary Rights of DMS and All DMS and Affiliated Entities, expressly applied "with equal force and effect to DMS and any related organizations, including but not limited to DMS LP, S. Alexander Soleimani Dental Corp., Soheil Soleimani DMD Corp., Soleimani Dental Corp., S.A. Soleimani Dental Corp, or Smile Finders."  The contract protected DMS and its affiliated entities' confidential and proprietary information, including "customer lists, customer information, names, addresses and information relating to leads, lists of leads, names, addresses and telephone numbers of referral sources, . . . marketing information, methods of operation, . . . and all other information of independent economic value to DMS."  Baratian agreed he would not "directly or indirectly, either during the term of this contractual relationship with DMS or thereafter, disclose or use the Confidential Information other than in the business of or as directed by DMS, without the prior written consent of DMS."  He also agreed not to use the confidential information for a period of three years following termination of his relationship with DMS

against her on her cross-complaint against Smile Finders for unfair business practices, and Baratian and Medina have not appealed the entry of a permanent injunction in favor of Smile Finders prohibiting any use of the trade secrets at issue in the litigation.

[2]     Baratian's original contract for services, effective March 18, 2007, was with Soleimani Dental Corporation.  He signed a second contract with Soleimani Dental Corporation effective December 1, 2009.

4

"to either directly or indirectly solicit, or take away, or attempt to solicit, or take away any of the patients of DMS, either for Dentist or for any other person, firm or corporation."

Medina and Price also signed confidentiality agreements as a term of their employment. Medina's agreement, signed in 2003, was between her and all six affiliated dental entities. Price's agreement was with Smile Finders, her employer until she transferred to DMS in 2011.[3] The agreements, in substantially similar language, protected any "trade secrets, as that term is defined by the law," and "any and all information concerning any database or contact names [and] any resources which employer uses to promote the business," and specifically identified as confidential information "[t]he names and addresses of Employer's contact and referral sources, and clients and prospective clients from whom Employee has solicited business while in the employ of the Employer, and all other confidential information relating to those contact and referral sources and clients."

2. *Misappropriation of Smile Finders's Company List*

Smile Finders generates referrals to the individual dental offices owned by the Soleimani Dental Corporations primarily through employer-sponsored corporate health fairs (nonexclusive events that other health care providers attend) and dental wellness (exclusive) events. Smile Finders employees (bookers) attempt to arrange both types of marketing opportunities at

---

[3] The confidentiality agreement signed by Price is undated, and the handwritten insert on the line to identify her employer is illegible on the copy of the document included in the record on appeal.

medium- and large-size companies, while other Smile Finders employees (field representatives) actually conduct the events. Contact information (the business's name and address and the contact person's email and telephone number) for individuals at companies that might be interested in hosting such events are entered into a confidential company or client list, which Soleimani described as "our secret sauce that gets us in and gets us patients." By 2012 the company list had approximately 12,000 entries. Soleimani estimated it took approximately 100,000 hours to develop, maintain and update the list. The jury found in response to special verdict questions—and it is undisputed on appeal—that the company list is a trade secret, owned by Smile Finders, with actual or potential independent economic value.

In March 2012, while Baratian was still working at one of the Soleimani Dental Corporations offices, he asked Medina to leave Smile Finders and come to work with him at a new dental practice. In their discussions about creating a new team, Baratian asked Medina to bring with her the contact information she had access to as Smile Finders's marketing director. After initially declining Baratian's offers, Medina agreed to work with him; and the two entered into a contract on April 12, 2012 (effective June 1, 2012) for Medina to "set up and supervise a marketing campaign/team to market and sell dental work." Their agreement compensated Medina with a fixed monthly salary and an escalating share of the revenues generated at the new practice. Medina left Smile Finders on April 30, 2012.

In anticipation of her new position in marketing for Baratian's dental practice, and at Baratian's request, Medina accessed Smile Finders's confidential database (that is, the company list) and downloaded the names of companies and

contact individuals, emails and phone numbers and the number of employees at each business. Medina described the information she took as "publicly available" and claimed not to have removed "internal notes." The information was then uploaded into Baratian's computer system at his new practice.

Baratian also recruited several other employees in the affiliated Soleimani entities for positions in his new practice, including Sayda Lopez, the office manager at the dental office where Baratian practiced. Baratian asked Lopez to bring patient information available to her at her current job to his new practice. Baratian also asked Price several months before starting his competing enterprise to explain Trojan, DMS's on-line insurance tracking service. Price did so and printed and delivered to Baratian several pages of Trojan reports in connection with her explanation.[4]

Baratian's independent contractor relationship with DMS was terminated in April 2012 after Soleimani learned Baratian was taking confidential information in anticipation of creating a competing dental practice. Throughout the summer and into the fall of 2012, as Baratian started and then grew his new practice, Medina performed marketing services for him, using, in part, the information she had downloaded from Smile Finders. She also used Smile Finders's training materials while working for Baratian.

---

[4] Price continued working at DMS until June 2012 and did not go to work for any of the Baratian-related entities.

7

### 3. *Causation and Damages*

The Soleimani parties' general theory of the case was that the Baratian parties, through use of the information on the company list misappropriated by Medina, were able to access companies and host wellness events that otherwise would have been staffed by Smile Finders representatives and diluted Smile Finders's presence at nonexclusive health fairs, all leading to a reduction in patients at the dental offices owned by the Soleimani Dental Corporations. Ariel Weiner, DMS's vice-president of operations, testified Smile Finders's attendance at wellness events and health fairs decreased by 28 percent from 2011 to 2012 and, using 2011 as a baseline, by 31.4 percent in 2013. Weiner also testified the Soleimani dental offices treated 5,630 new patients referred by Smile Finders in 2011, an average of 469 patients per month. In 2012, after Baratian and Medina left, the number of patients referred by Smile Finders dropped to an average of 260 patients per month. The average number of new patient referrals continued to drop in each of the following three years (through 2015).

Alfred Joyal, the Soleimani parties' dental marketing expert,[5] testified concerning the economic value of a marketing list and the worth of a patient referral. Based on information provided to him by the Soleimani parties, Joyal described Smile Finders's company list as "a very refined list of very specific companies that had PPO insurance, which is the most valuable type of insurance . . . . I saw that this list had been enriched to

---

[5] Joyal, the cofounder of 1-800-DENTIST, a dentist referral service, testified he had more than 30 years of dental marketing experience.

8

the point where it was very specific businesses that could be approached to attract patients." He then opined the list was "very valuable" and its loss "would be very detrimental to the business and in some ways hard to remedy." After explaining his methodology, which involved valuing a referral and a capture rate (how many referrals become actual patients in the door), Joyal opined the licensing value of Smile Finders's company list (that is, what Smile Finders could have expected to receive if it had granted exclusive permission for its use by another marketing entity) was approximately $2.25 million in 2011. That value would be diminished, Joyal continued, if someone outside the organization were to obtain the list for its use (that is, if it was no longer exclusive).

Leonard Lyons, the Soleimani parties' damages expert, testified concerning lost profits, as well as the overall economic effect on the Soleimani parties' businesses of the misappropriation of the company list and, to a limited extent, causation. Lyons explained his assignment: "I was asked to look at whether the theft of the trade secrets—based on that being causation, whether there is any effect on the revenues or the expenses creating a lost profits calculation that can be attributed to the loss of that—those trade secrets. In addition to that, I was asked to look at whether there were any other alternative causations that would reduce the likelihood that this was the cause of the damages I was calculating. That was for both Smile Finders, the marketing company, as well as the, as I classify them, the offices or the dental practice groups. In addition to those damages, I was also asked to look at, besides losing the cash every year from lost profits, what is that effect on the

9

business itself; were there any damages to the business in terms of total value of the business."

After explaining his methodology, and based on financial documents he reviewed from 2007 through 2017, Lyons testified the Soleimani Dental Corporations experienced sustained, substantial growth from 2007 until 2011 and then suffered a precipitous decline in business in 2012, which continued into 2013 and 2014, when the volume of patients stabilized at this lower level. In order to determine damages, Lyons explained, he needed to determine the damages for the loss of new patients, "what Smile Finders had the responsibility for," and the overall loss of patients (what he referred to as "patient count"), which would affect the dental offices. Both aspects "flows up into the management company." The following exchange then took place between Lyons and the Soleimani parties' counsel:

"Q. So the profits, if I'm understanding your testimony correctly, all run to the Dental Management Services management company?

"A. That is correct.

"Q. So in terms of—to the extent there were any damages caused to the affiliated dental offices, that would have run to Dental Management Services as the company that receives the profits from the entities, correct?

"A. Yes."

Considering the decline in patients at the Soleimani Dental Corporations' offices starting in 2012 and various other factors including estimated revenue growth without the misappropriation, Lyons opined Smile Finders had suffered a present-value loss of $3.654 million as a result of the misappropriation of the company list. Lyons conducted a

separate analysis for lost profits at the dental offices, on an office-by-office and year-by-year basis.  His opinion was that the offices in the aggregate lost $25.868 million.  Lyons also calculated the overall diminution in value of Smile Finders as a result of its lower annual revenue ($5,792,015) and separately the diminution in value of the dental offices ($43,447,580).[6]

Lyons also examined other factors apart from misappropriation of the trade secrets that might explain the decline in patients and revenue experienced by the Soleimani parties, including the national economy; what was happening to dentistry at the national, state and local level; the Soleimani Dental Corporations' transition from being out-of-network to in-network at Delta Dental; and complaints about patient care and the quality of work at the offices.  The only material factor, according to Lyons, was the change in status with Delta Dental, which was "a business decision that ideally would have brought you more patients rather than less patients.  But because of the nature of what transpired, you could see that, if you were going to lose patients, that would have a substantial additional effect caused by the loss and the ability to gain new patients, not that was causing the loss in patients. . . .  So it's an after effect of the initial causation."

---

[6]    Lyons explained the actual damage suffered by Smile Finders was somewhere between $3.654 million in lost profits and the $5.792 million loss in value, not the sum of the two figures.  Similarly, damage to the dental offices was somewhere between $25.868 million and $43.447 million.

### 4. *The Baratian Parties' Motion for Nonsuit*

At the conclusion of the Soleimani parties' case-in-chief, the Baratian parties moved for nonsuit pursuant to Code of Civil Procedure section 581c. As pertinent to the issues on appeal, in their written motion the Baratian parties argued the Soleimani parties had failed to prove misappropriation of the company list caused any of the damages claimed; only Smile Finders and none of the other Soleimani parties owned the company list and had standing to assert a cause of action for misappropriation of trade secrets; the company list was not a trade secret; the information taken by Medina was not a trade secret; the contracts with former employees, which contain competitive restraints, violated Business and Professions Code section 16600 and were, therefore, void; and there was no substantial evidence that Price did anything that violated her obligations to DMS. The Soleimani parties filed a written opposition.

After hearing argument from both sides, the court granted the motion in part. Specifically, the court granted nonsuit on the first cause of action for misappropriation of trade secrets as to DMS and the Soleimani Dental Corporations on the ground that none of them had any ownership of, or legal right to, the customer list. The court denied the motion on the first cause of action as to Smile Finders, finding there was sufficient evidence presented that the customer list was a trade secret and that Baratian, Baratian Dental Corporation, Medina and Genwell acquired and used the trade secret, but ruled the evidence was insufficient to prove Smile Finders, as opposed to other parties, suffered a loss of profits as a result of the misappropriation. "[E]vidence of other damages to Smile Finders which have not

12

been addressed in the motion," the court continued, "will be submitted to the jury."

Turning to the second cause of action for breach of contract, the court granted the motion as to the four Soleimani Dental Corporations because none of them had a contract with any of the individual defendants named in the cause of action. The motion of Medina and Price was granted as to Smile Finders's contract cause of action to the extent it was based on misappropriation of a trade secret on the ground that claim was preempted by the California Uniform Trade Secrets Act (Civ. Code, § 3426 et seq.) (CUTSA) and for disclosure of any other confidential information, such as patient identities, on the ground no evidence had been introduced that such disclosures had caused any injury to Smile Finders. The motion of Baratian on DMS's breach of contract claim was granted because there was no evidence of DMS's ownership of any trade secret and no evidence of any taking of any other confidential information.

5. *Closing Argument, the Special Verdict and a Permanent Injunction*

Following the ruling on the nonsuit motion, trial continued on Smile Finders's misappropriation claim against Baratian, the Baratian Dental Corporation, Medina and Genwell to the extent Smile Finders sought damages other than for lost profits. During his closing argument Smile Finders's counsel told the jury, "You heard the judge read the instruction on damages.[7] It just needs

---

[7]    By agreement of counsel the court reporter did not record the reading of the jury instructions, and a copy of the instructions was not included in the record on appeal. From the transcript of the court's final conference with counsel regarding instructions, it

to be a substantial factor in causing the harm.  This is a company that is going up and starts going down.  And substantial factor just means that it's not a trivial factor.  It had some significance."  Counsel continued, "And diminution of Smile Finders has occurred.  Diminution merely means loss.  The value after the theft is not the same. . . .  The data is diluted.  It's in the public domain. . . .  So what's the damage?  The diminution in the value to the business is 5.7—$5,792,015. . . .  There are two forms of damages that Smile Finders is seeking.  In the verdict form, you'll be asked to fill out, relate to the loss of the value of the business and the loss of the value of the company list.  The [loss] of the value of the company list—Dr. Joyal testified to it.  It's a licensing value.  And that diminution of the value of the company list is 2.25—$2,251,200."

In his closing argument Baratian's and Medina's counsel also questioned the validity of the valuations by Joyal and Lyons, focusing on their sole reliance on Soleimani employees for an understanding of the company list, rather than conducting independent analyses.  In addition, Medina's counsel discussed the evidence of the various reasons, unrelated to Medina taking the customer list, that the Soleimani Dental Corporations' business began to decline in 2011 and continued their decline in the years thereafter, including an increase in the number of complaints about the quality of care.[8]  He also emphasized that

appears the court gave a special instruction on damages and not CACI No. 4409, Remedies for Misappropriation of Trade Secret.

[8]    Counsel summarized the evidence, for example, that established Baratian and Medina had gone to 122 events in 2012.  Smile Finders, which had sent representatives to more than 1,600 in 2011, went to fewer than 1,200 in 2012, leaving several

14

Medina stopped working with Baratian in February 2013, and the evidence indicated Baratian's marketing efforts from that point on did not utilize information from the company list, yet the Soleimani Dental Corporations' patient numbers continued to decline.

In a special verdict (in which "Baratian" was deemed to include the Baratian Dental Corporation and "Medina" deemed to include Genwell) the jury found Smile Finders was the owner of the company list; the company list was secret at the time of the alleged appropriation; the company list had actual or potential independent economic value because it was secret; Smile Finders made reasonable efforts to keep the company list secret; both Baratian and Medina acquired or used the company list by improper means; but neither Baratian's nor Medina's improper acquisition or use of the company list was a substantial factor in causing Smile Finders damages.

After the jury returned its verdict, the court continued with a scheduled second phase of the trial at which it denied Smile Finders's request for a reasonable royalty for misappropriation of the company list but granted its request for entry of a permanent injunction against Baratian, the Baratian Dental Corporation, Medina and Genwell, prohibiting them from accessing, possessing, transferring or making any use of the company list and from accessing, possessing, transferring or making any use of materials created by copying or reproducing the contents of the company list. The injunction expressly provided it did not prohibit attending health fairs, wellness events or engaging in

hundred events unattended by Smile Finders that could not reasonably be explained only by Baratian and Medina usurping its position at health fairs and wellness events.

15

any other marketing activities based on contact information that was publicly available and obtained by lawful efforts.

The court entered judgment in accordance with the jury verdict and rulings at the second phase of the trial on April 16, 2019.  The Soleimani parties filed a timely notice of appeal.

## DISCUSSION

1. *Nonsuits:  Governing Law and Standard of Review*

Code of Civil Procedure section 581c, subdivision (a), provides, "Only after, and not before, the plaintiff has completed his or her opening statement, or after the presentation of his or her evidence in a trial by jury, the defendant, without waiving his or her right to offer evidence in the event the motion is not granted, may move for a judgment of nonsuit."  "A motion for a nonsuit is in effect a demurrer to the evidence and the court must assume that all the evidence received in favor of the plaintiff relevant to the issues is true.  All presumptions, inferences and doubtful questions must be construed most favorably to the plaintiff's case.  The rule is so well settled that it is not necessary to enlarge upon it." (*Richardes v. Richardes* (1931) 211 Cal. 392, 394; accord, *Hawley v. Orange County Flood Control Dist.* (1963) 211 Cal.App.2d 708, 712-713.)

We review an order granting nonsuit de novo, using the same standard as the trial court.  (*Nally v. Grace Community Church* (1988) 47 Cal.3d 278, 291.)  "A defendant is entitled to a nonsuit if the trial court determines that, as a matter of law, the evidence presented by plaintiff is insufficient to permit a jury to find in [the plaintiff's] favor." (*Ibid.*)  The court must not weigh the evidence or consider witness credibility, must accept as true the evidence most favorable to the plaintiff, must disregard conflicting evidence, and must draw every reasonable inference—

16

and resolve all presumptions, conflicts, and doubts—in the plaintiff's favor.  (*O'Neil v. Crane Co.* (2012) 53 Cal.4th 335, 347; *Castaneda v. Olsher* (2007) 41 Cal.4th 1205, 1214-1215.) "Although a judgment of nonsuit must not be reversed if plaintiff's proof raises nothing more than speculation, suspicion, or conjecture, reversal is warranted if there is 'some substance to plaintiff's evidence upon which reasonable minds could differ.'" (*Carson v. Facilities Development Co.* (1984) 36 Cal.3d 830, 839; accord, *McNair v. City and County of San Francisco* (2016) 5 Cal.App.5th 1154, 1168-1169; *Wolf v. Walt Disney Pictures & Television* (2008) 162 Cal.App.4th 1107, 1124.)

There is a split of authority on whether our review of a nonsuit motion is limited to the reasons given by the trial court or whether we may examine grounds raised by a defendant but not ruled on by the trial court in order to affirm the ruling.  (See *Holistic Supplements, LLC v. Stark* (2021) 61 Cal.App.5th 530, 541 [noting split of authority]; compare *Alpert v. Villa Romano Homeowners Assn.* (2000) 81 Cal.App.4th 1320, 1328 ["[w]e consider grounds which were both advanced by the moving party and ruled on by the trial court"] with *Saunders v. Taylor* (1996) 42 Cal.App.4th 1538, 1542, fn. 2 [rejecting narrow scope of review and finding no bar to the "consideration on appeal of alternative grounds which were stated by the moving party but which were not among those relied upon by the trial court in granting the motion"].)

Both sides of this debate, however, agree an order granting a nonsuit generally may not be affirmed on a ground not asserted by the defendant in the motion because that deprives the plaintiff of the opportunity to seek to reopen the evidence to cure the deficiency.  (*Consolidated World Investments, Inc. v. Lido*

17

*Preferred Ltd.* (1992) 9 Cal.App.4th 373, 378 ["defects not specifically pointed out by the moving party cannot be considered by the trial court, or by us, in determining the merits of the motion"]; see *Wilson v. Century 21 Great Western Realty* (1993) 15 Cal.App.4th 298, 305-306 ["'[g]rounds not specified in a motion for nonsuit will be considered by an appellate court only if it is clear that the defect is one which could not have been remedied had it been called to the attention of plaintiff by the motion,'" quoting *Lawless v. Calaway* (1944) 24 Cal.2d 81, 94]; see also *Alpert v. Villa Romano Homeowners Assn.*, *supra*, 81 Cal.App.4th at p. 1328, fn. 8 ["[O]n a motion for nonsuit, the plaintiff is to be given the opportunity to cure the defect in its case. To this end, the court is to hear offers of proof and grant a motion to reopen if timely"], citing *Eatwell v. Beck* (1953) 41 Cal.2d 128, 133 [one of the chief objects of a nonsuit motion is to point out to plaintiff the defects in its case so that they may be remedied and the case decided on its merits].)

2. *The Trial Court Erred in Granting Nonsuit on Smile Finders's Claim for Lost Profits Due to Misappropriation of Its Trade Secrets*

Lyons, the Soleimani parties' damages expert, testified Smile Finders lost profits of approximately $3.654 million following misappropriation of the company list. He developed a separate lost profits figure for the Soleimani Dental Corporations ($25.868 million). Lyons initially assumed, consistent with the Soleimani parties' theory of the case, that the decline in revenue for Smile Finders and the dental offices was attributable to the misappropriation and then did an economic (reverse regression) analysis that excluded other causes (patient dissatisfaction and increased competition, for example) as responsible for the loss.

18

The nonsuit motion challenged in the aggregate the evidence that misappropriation of the company list (even if it was found to be a protectible trade secret) was a substantial cause of any injury to the Soleimani parties and, in particular, the proximate cause of lost profits in any part of the Soleimani enterprise.  That is, although arguing only Smile Finders had standing to pursue a cause of action for misappropriation of a trade secret, the motion addressed causation in general, not as it related to Smile Finders rather than the other Soleimani parties.  (DMS and the Soleimani Dental Corporations sought their lost profits as a damage remedy for causes of action in addition to misappropriation, including for Baratian's and Medina's breach of their confidentiality agreements; and Lyons testified to those damage figures.)  Yet that was the basis for the order:  Although rejecting the Baratian parties' argument there was an overall failure of proof, the court ruled there was no evidence Smile Finders had suffered a loss of profits as a result of the misappropriation.

This was error for two reasons.  First, the court issued its ruling on a ground not raised by the Baratian parties in their motion.  Second, even if the motion were properly before it, the court failed to consider the reasonable inference from the evidence that misappropriation of the company list caused Smile Finders's reduced profitability in 2012 and thereafter.

To be sure, there was a gap in Lyons's testimony:  Although there was evidence Smile Finders's success in marketing and generating referrals to the Soleimani Dental Corporations declined after the misappropriation of the company lists, Lyons never described how Smile Finders generated revenue or explained why a decline in the number of patients seen at the

19

office level, which resulted in lower profits for DMS and the corporations that owned those offices, negatively impacted the profitability of Smile Finders, the marketing company. But it was a reasonable inference from Lyons's testimony, as well as that of other witnesses who explained the nature of Smile Finders's business and its relationship to the other Soleimani entities, that the loss in referral business was responsible for the deterioration in Smile Finders's financial condition.[9] Nothing

---

[9] After Weiner testified to a total drop in production by the dental offices of approximately $225 million following the misappropriation of the company list, as depicted on an exhibit displayed to the jury, Baratian's counsel asked in cross-examination, "And then this plaintiff here, Smile Finders, which is not a dental corporation, it's a marketing thing—do you know how much they received as part of this whole scheme?" Weiner responded, "Yes, I can tell you, if you want me to go into more detail, how things are—" Counsel interrupted the answer and said, "I'm not asking you for that. I'm just trying to clarify that these numbers do not allocate the amount of revenue received by Smile Finders. It's just a cumulative production of the medical stuff or the dental stuff, correct?" Weiner answered, "The numbers I showed you are an accumulation, or I should say a summation, of the dental corporations' revenue. I have not discussed how that revenue is apportioned to other entities, no."

Although Weiner was not thereafter asked on redirect by counsel for the Soleimani parties to complete the answer and explain how revenue generated by the dental offices was apportioned to Smile Finders, Weiner's answer, as brief as it was, established that Smile Finders in some fashion received a portion of the revenue generated by the dental offices. A further inference from his testimony that Smile Finders suffered a loss in revenue (and profits) due to fewer patients being seen at the dental offices was certainly a reasonable one.

more was required to survive a motion for nonsuit.  (See *Bierbower v. FHP, Inc.* (1999) 70 Cal.App.4th 1, 6 [plaintiff opposing a motion for nonsuit "is entitled to the benefit of any conflict in the evidence and any reasonable inference that might be drawn from it"].)

3.  *The Trial Court Erred in Granting Nonsuit as to the Soleimani Parties' Breach of Contract Claims Against Baratian and Medina*

a.  *The trial court improperly limited its analysis of the contract claims to the contracting parties*

As discussed, Baratian's contract as an independent contractor was with DMS; Medina's employment agreement was directly with Smile Finders.  The trial court granted the motion for nonsuit with respect to the breach of contract claims by the Soleimani Dental Corporations (the four corporate entities operating dental offices) on the ground they did not have a contract with any of the defendants named in the cause of action. This was error for two reasons.

First, the moving parties did not assert the absence of a contractual relationship as a basis for their motion, as required. (See, e.g., *Wilson v. Century 21 Great Western Realty*, *supra*, 15 Cal.App.4th at pp. 305-306; *Consolidated World Investments, Inc. v. Lido Preferred Ltd.*, *supra*, 9 Cal.App.4th at p. 378.)

Second, Baratian's and Medina's confidentiality agreements were made for the benefit of not only the contracting corporate entity but also "any related entities" in the case of Baratian, and DMS and "other Professional Corporations of Alexander Soleimani" in the case of Medina.  As intended third party beneficiaries, these other entities were entitled to pursue a breach of contract action for Baratian's and Medina's violation of

21

their obligations with regard to confidential and proprietary information.  (Civ. Code, § 1559 ["[a] contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it"]; see *Goonewardene v. ADP, LLC* (2019) 6 Cal.5th 817, 826-827 ["[i]n California, as in other jurisdictions, it is well established that under some circumstances a third party may bring an action for breach of contract based upon an alleged breach of a contract entered into by other parties"]; *Harper v. Wausau Ins. Corp.* (1997) 56 Cal.App.4th 1079, 1087 ["[a] third party may qualify as a beneficiary under a contract where the contracting parties must have intended to benefit that individual and such intent appears on the terms of the agreement"].)

"[T]he principles [of contract interpretation] do not become inoperative merely because the contract is invoked by someone who was not a party to it.  The question in such a case is whether the parties intended to confer enforceable rights on the party now asserting them.  The governing substantive principle is that a nonparty who claims benefits under the contract is entitled to do so as long as the claimed benefit does not flow to him as a mere *incident* of the agreement, but is one the contracting parties *intended* to confer.  [Citations.]  [¶]  The rights of a third party beneficiary thus depend upon the intent of the contracting parties.  [Citation.]  'Ascertaining this intent is a question of ordinary contract interpretation.'  [Citation.]  It follows that if the requisite intent appears unambiguous from the face of the contract, the third party makes a prima facie showing of entitlement merely by proving the contract."  (*Rodriguez v. Oto* (2013) 212 Cal.App.4th 1020, 1028.)

22

The Soleimani parties proved the contracts and, therefore, established a prima facie case for their standing as third party beneficiaries to enforce the confidentiality agreements against Baratian and Medina. Baratian and Medina's only response (other than their general harmless error analysis, discussed in section 4) is that we should not consider the third party beneficiary argument because it was not mentioned in the written opposition to the motion for nonsuit or during oral argument at the hearing on the motion. As discussed, however, it was the defendants' failure to raise the issue of standing to assert a breach of contract claim in their moving papers, not the Soleimani parties' lack of response, that is significant. A nonsuit on the contract claims on this ground was improper.

b. *CUTSA does not preempt breach of contract claims*

Citing CUTSA preemption, the Baratian parties moved for nonsuit as to all causes of action in the second amended complaint other than misappropriation and breach of contract (for example, conversion). The trial court properly granted that aspect of the motion but erred in ruling preemption precluded in part the Soleimani parties' breach of contract claims, a ground not advanced in the motion, because CUTSA does not preempt contract claims based on misappropriation of trade secrets.[10]

"CUTSA includes a specific provision concerning preemption. That provision, [Civil Code] section 3426.7, reads in pertinent part as follows: '(a) Except as otherwise expressly provided, this title does not supersede any statute relating to

---

[10] The Baratian parties acknowledge the trial court erred in ruling CUTSA preempted the contract claims based on misappropriation.

23

misappropriation of a trade secret, or any statute otherwise regulating trade secrets. [¶] (b) This title does not affect (1) contractual remedies, whether or not based upon misappropriation of a trade secret, (2) other civil remedies that are not based upon misappropriation of a trade secret, or (3) criminal remedies, whether or not based upon misappropriation of a trade secret.'  Section 3426.7 thus 'expressly allows contractual and criminal remedies, whether or not based on trade secret misappropriation.'  [Citation.]  'At the same time, § 3426.7 implicitly preempts alternative civil remedies based on trade secret misappropriation.'"  (*K.C. Multimedia, Inc. v. Bank of America Technology & Operations, Inc.* (2009) 171 Cal.App.4th 939, 954; accord, *Angelica Textile Services, Inc. v. Park* (2013) 220 Cal.App.4th 495, 508 ["breach of contract claims, even when they are based on misappropriation or misuse of a trade secret, are not displaced by [C]UTSA"].)

In sum, the motion for nonsuit directed to the breach of contract cause of action asserted by all six of the Soleimani parties should have been denied as to both Baratian and Medina based on their misappropriation of the company list.  As to Price, however, her agreement was limited to Smile Finders; there was no evidence she was involved in the theft of the company list; and, although there was some evidence (including her partial admission) she had provided patient information to Baratian that he intended to use for marketing purposes, Smile Finders presented no evidence of any injury caused by that breach, as the

trial court found.  Accordingly, the motion was properly granted as to her.[11]

4. *The Jury's Special Verdict Finding on Causation Means Some, but Not All, of the Trial Court's Errors Were Harmless*

The Baratian parties make only a modest effort to defend the trial court's nonsuit order, primarily arguing the judgment should be affirmed because the jury's finding that misappropriation of the company list was not a substantial factor in causing any damage to Smile Finders necessarily means any error committed by the trial court was harmless.  The Baratian parties are, of course, correct that, to secure a reversal, the Soleimani parties must show it is reasonably probable they would have received a more favorable result at trial had the errors not occurred.  (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800

---

[11]   Smile Finders contends it is at least entitled to seek an award of nominal damages for Price's breach of the confidentiality agreement.  (*Genisman v. Carley* (2018) 29 Cal.App.5th 45, 53 [nominal damages are properly awarded when there is no loss or injury to be compensated but where the law still recognizes a technical invasion of a plaintiff's rights or a breach of a defendant's duty]; see Civ. Code, § 3360.)  However, we agree with Price this argument has been forfeited because it was not raised in the trial court in response to the motion for nonsuit, which asserted Smile Finders had failed to present substantial evidence of her liability or any resulting injury.  (See *Johnson v. Greenelsh* (2009) 47 Cal.4th 598, 603 [issues not raised in the trial court cannot be raised for the first time on appeal]; cf. *Aleksick v. 7-Eleven, Inc.* (2012) 205 Cal.App.4th 1176, 1185-1187 [plaintiff forfeited argument not made in opposition to defendant's motion for summary judgment and raised for first time on appeal].)

[error justifies reversal in a civil action only if it is reasonably probable a different result would have been reached absent the error]; see Cal. Const., art. VI, § 13 ["[n]o judgment shall be set aside, or new trial granted, in any cause . . . for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice"]; Code Civ. Proc., § 475 ["[n]o judgment, decision, or decree shall be reversed or affected by reason of any error, ruling, instruction, or defect, unless it shall appear from the record that such error, ruling, instruction, or defect was prejudicial . . . and that a different result would have been probable if such error, ruling, instruction, or defect had not occurred or existed"].)

Following the order partially granting the motion for nonsuit, the jury found Baratian and Medina had misappropriated the company list, a trade secret with actual or potential economic value, but their acquisition and use of the list did not damage Smile Finders. In finding no injury to Smile Finders, the jury had before it Lyons's expert testimony regarding the company's loss in value following the misappropriation and Joyal's expert opinion as to the misappropriation's damage to the licensing value of the list itself. Having rejected both of those theories, the Baratian parties argue, there is no reason to conclude the jury would have found the misappropriation (or Baratian's and Medina's breach of their confidentiality agreements) caused Smile Finders's loss of profits.

We agree the error in granting the nonsuit motion with respect to Smile Finders's loss of profits was harmless. It is perhaps true the special verdict "does not mean the jury

26

necessarily would have found Baratian, Baratian Dental Corporation, Medina, and Genwell's misconduct did not cause the damages that *were not* submitted to the jury," as Smile Finders contends. But Smile Finders's burden is to demonstrate it was reasonably probable the jury would have found in its favor if instructed on lost profits. It has not even attempted to do so. Indeed, given Lyons's opinion that Smile Finders's $5.792 million decline in the value was largely due to the company's reduced earnings following the misappropriation, a theory that went to the jury notwithstanding the order granting nonsuit on lost profits, the jury's rejection of that damage claim makes it highly unlikely it would have viewed Lyons's lost profit theory any more favorably.

The argument the special verdict finding on causation with respect to Smile Finders renders harmless the trial court's errors as to the breach of contract claims by DMS and the Soleimani Dental Corporations, in contrast, fails. As the Baratian parties have emphasized, "[E]ach Appellant occupies a somewhat different legal position." The trial court found (albeit in connection with a legally erroneous ruling) that Lyons's testimony adequately established damages (lost profits) to the Soleimani entities other than Smile Finders. The gaps in Lyons's testimony regarding Smile Finders's lost profits, although not sufficient to justify nonsuit, could well explain, at least in part, the jury's ultimate finding that Baratian's and Medina's mistreatment of confidential information did not injure that company. But it is reasonably probable a different outcome could result from a trial in which a jury is asked whether that same misconduct—theft of the company list and use of the information in marketing a competing dental practice—was at least partially

27

responsible for the decline in referrals to, and patients treated at, the Soleimani Dental Corporations. DMS and the Soleimani Dental Corporations, as parties to, or third party beneficiaries of, the confidentiality agreements signed by Baratian and Medina, are entitled to have a jury evaluate that claim.

## DISPOSITION

The order granting the motion for nonsuit in favor of Baratian and Medina on the second cause of action for breach of contract as asserted by DMS and the Soleimani Dental Corporations and the judgment as to those parties are reversed with instructions that the trial court conduct a new trial on that cause of action. In all other respects the judgment is affirmed. The parties are to bear their own costs on appeal.


PERLUSS, P. J.

We concur:



FEUER, J.



IBARRA, J.[*]

---

[*] Judge of the Santa Clara Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.